**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **MARVEL MA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 6:11-cv-3048-BP** |
| | ) | |
| **BOARD OF GOVERNORS OF** | ) | |
| **MISSOURI STATE UNIVERSITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## SUGGESTIONS IN SUPPORT OF DEFENDANT'S REVISED MOTION *IN LIMINE*

COMES NOW Defendant Board of Governors of Missouri State University (the "University" or "MSU"), by and through its attorneys TUETH KEENEY COOPER MOHAN & JACKSTADT, P.C., and hereby files its Suggestions in Support of its Revised Motion *In Limine*. In support of said Motion, the University states as follows:

### TABLE OF CONTENTS

INTRODUCTION..........................................................................................................5

ARGUMENT ...............................................................................................................8

      A.      Matters allegedly related to Plaintiff's discrimination claim. ......................9

             1.      Evidence of statements allegedly made by or correspondence sent by individuals employed by LNU who work/worked at the COIB. ...................................................................................9

             2.      Evidence of alleged absences of other COIB instructors and subsequent treatment or discipline. ...........................................14

             3.      Evidence of the salary or pay of COIB instructors other than Plaintiff and any alleged disparate pay among such instructors. ......16

1

4.      Evidence of alleged stray remarks of Dan Shepherd. ......................18

5.      Evidence of any alleged misconduct of Dan Shepherd unrelated to
        Plaintiff's termination or employment, including evidence
        relating to any alleged relationship between Shepherd and a
        student, evidence relating to Shepherd's relationship with other
        COIB instructors and staff, and evidence relating to Shepherd's
        resignation as Associate Dean of the COIB .....................................20

6.      Evidence of any alleged misconduct of Mike Coutts, including
        evidence relating to any alleged claims of sexual harassment
        or any alleged relationship between Coutts and a student. ..............23

7.      Evidence of any alleged misconduct of other LNU employees who
        worked as COIB instructors unrelated to missing classes or
        absenteeism ......................................................................................25

8.      Evidence regarding the alleged improper termination or
        non-renewal of other LNU employees who worked as
        COIB instructors ..............................................................................26

9.      Evidence regarding any complaints from current or former
        students or instructors regarding the COIB, LNU, or MSU that
        are unrelated to Plaintiff's claim that he was terminated due to his
        Chinese race or national origin. ......................................................27

10.     Evidence of Plaintiff's performance as an instructor at the
        COIB unrelated to missing classes or absenteeism..........................28

11.     Evidence of MSU's internal audit of the COIB and any other
        articles, publications, evidence or testimony detailing
        operational concerns or problems with the COIB............................29

12.     Audio recordings...............................................................................30

B.      Matters related to Plaintiff's damages claims. ...........................................31

1.      Evidence of claims for back pay and a housing allowances ............31

2.      Evidence, inquiry, or comment regarding claims for prejudgment
        interest on an award of back pay and/or compensation to off-set
        any alleged adverse tax consequences due to a lump sum payment
        of back pay .......................................................................................33

2

      3.      Evidence of claims for front pay........................................................34

      4.      Evidence regarding punitive damages ...............................................35

      5.      Evidence of Plaintiff's attorneys' fees and court costs
             incurred as part of the litigation he pursued against LNU
             in China.............................................................................................36

      6.      Evidence of Plaintiff's financial condition. .....................................37

      7.      Evidence regarding the University's insurance coverage. ................37

   C.     Miscellaneous ...........................................................................................37

      1.      Conclusory statements and speculation, inquiry, or comment
             about the intent or state of mind of others. .......................................37

      2.      Inquiry or comment regarding attorney-client matters.....................38

      3.      Evidence of settlement offers and responses and discussions
             related thereto...................................................................................39

      4.      Inquiry or comment about the testimony of other witnesses. ..........40

      5.      Equally available (or unavailable) evidence. ...................................40

# TABLE OF AUTHORITIES

**Cases**

*Arneson v. Callahan*, 128 F.3d 1243 (8th Cir. 1997) ........................................34

*Biben v. Card*, 119 F.R.D. 421 (W.D. Mo. 1987)..............................................39

*Bone v. G4S Youth Servs.*, LLC, 686 F.3d 948 (8th Cir. 2012) ............................15, 22, 24

*Clinton's Ditch Co-op Co., Inc. v. NLRB*, 778 F.2d 132 (2d Cir. 1985)
   *cert denied*, 479 U.S. 814, 93 L. Ed. 2d 25, 107 S. Ct. 67 (1986) ...............12

*G. Heileman Brewing Co., Inc. v. NLRB*, 879 F.2d 1526 (7th Cir. 1989) .........................12

*Hukkanen v. Int'l Union of Operating eng'rs, Hoisting & Portable Local No. 101*, 3 F.3d 281 (8th Cir. 1993) ............................................................34

*Indus. Pers. Corp. v. NLRB*, 657 F.2d 226 (8th Cir. 2009) ................................12

*Leehy v. Supreme Express & Transfer Co.*, 646 S.W.2d 786 (Mo. Banc 1983)...............40

*McCaffrey v. Estate of Brennan*, 533 S.W. 2d 264 (Mo. Ct. App. 1976)..........39

*McCormack v. Capital Elec. Constr. Co.*, 35 W.W.3d 410 (Mo. Ct. App. 2000)............37

*Nichols v. American Nat'l Ins. Co.*, 154 F.3d 875 (8th Cir. 1998) ...................................40

*Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75 (1998).......................................19

*Powell v. N. Ark. College*, 2009 U.S. Dist. LEXIS 59826 (W.D. Ark. 2009) ..................34

*Raber v. Curry Ice & Coal of Carlinville, Inc.*, 2012 U.S. Dist. LEXIS 133930, (W.D. Mo. Sept. 18, 2012)..........................................................................10

*Seubert v. FFE Transp. Servs.*, 4:11CV01651m, 2013 U.S. Dist. LEXIS 30310 (E.D. Mo. March 6, 2013)..........................................................................32

*Stanford v. Morgan*, 588 S.W.2d 89 (Mo. App. 1979)......................................37

*Stone v. City of Columbia*, 885 S.W.2d 744 (Mo. Ct. App. 1994) ...................................40

*Stroh Container Co. v. Delphi Indus., Inc.*, 783 F.2d 743 (8th Cir. 1986) ........................34

*TFC Inventory Fin. Inc. v. Northsore Outdoor, Inc.*, No. 1:11CV85, 2012 U.S. Dist. LEXIS 91997 (N.D. Ohio July 3, 2012) ..........................................................33

*Thomas v. Bakery, Confectionery & Tobacco Workers Int'l Union, Local #433*, 982 F.2d 1215 (8th Cir. 1992) ...................................................................34

*Twymon v. Wells Fargo & Co.*, 462 F.3d 925 (8th Cir. 2006)...........................................19

*U.S. v. Condon*, 720 F.3d 748 (8th Cir. 2013) ................................................8,9

*U.S. v. McMillian*, 508 F.2d 101 (8th Cir. 1974).............................................31

*Wall v. Bascombe*, 2011 U.S. Dist. LEXIS 291 (W.D. Mo. Jan. 4, 2011)........................40

4

**Rules and Regulations**

Fed. R. Civ. P. 26(a)(1) ........................................................................36

Fed. R. Civ. P. 26(a)(1)(iii) .............................................................33, 35

Fed. R. Evid. 37(c)(1) .............................................................32, 33, 35, 36

Fed. R. Evid. 402 ..................................................................................8

Fed. R. Evid. 403 ..................................................................................8

Fed. R. Evid. 404(a)(1), (b)(1) ...............................................................22

Fed. R. Evid. 408 ................................................................................39

Fed. R. Evid. 411 ................................................................................37

Fed. R. Evid. 801 ..................................................................................9

Fed. R. Evid. 801(d)(2)(D) ...............................................................10, 13

Fed. R. Evid. 802 ..................................................................................9

**<u>Statutes</u>**

42 U.S.C. § 1891a(b)(1) .......................................................................36

42 U.S.C. § 2000e-1(c) .........................................................................10

## <u>INTRODUCTION</u>

Plaintiff's sole remaining claim[1] against the University is that his employment as an

instructor at the LNU-MSU College of International Business ("COIB") in Dalian, China was

---

[1] Plaintiff has abandoned Count 2 of his Second Amended Complaint, Doc. 42, alleging that the University "tortiously interfered" with an alleged contract between Plaintiff and the LNU-MSU College of International Business. Plaintiff's MSJ Response, Doc, 103, p. 5.

5

terminated in October of 2009 because of his Chinese race or national origin in violation of Title VII. Despite Plaintiff's suggestion to the contrary, the issues in this case and the evidence relating thereto are relatively narrow. Throughout this litigation, in both Plaintiff's discovery responses and his Response to the University's Motion for Summary Judgment ("Plaintiff's MSJ Response"), Doc. 103, Plaintiff has asserted numerous different theories and speculation as to why he was terminated. He has also attempted to overwhelm the University and this Court with a host of information that is immaterial and irrelevant to his claims.

In addition, Plaintiff has made numerous key admissions in both his deposition and his MSJ Response. For instance:

- Plaintiff *admitted* that he was hired as an adjunct instructor at the COIB beginning in 2006, pursuant to an annual written contract between Plaintiff and Liaoning Normal University ("LNU").

- Plaintiff *admitted* that his appointment as an instructor at the COIB was year-to-year and that, at the conclusion of the term of each annual contract with LNU, Plaintiff's employment at the COIB could end.

- Plaintiff *admitted* that he was repeatedly rehired by (or with the knowledge of) the same decision-makers who Plaintiff claims terminated him in 2009 because of his race or national origin. In fact, Plaintiff claims that Dan Shepherd, the Associate Dean at the COIB, convinced Steve Robinette, MSU's Director of Academic Outreach and Support and Director of China Operations, to both rehire Plaintiff for the 2009-2010 academic

6

year and then, later in the same year, terminate him. Plaintiff apparently fails to recognize how incongruent these two claims are.

- Plaintiff *admitted* that he was informed on October 29, 2009, that his employment was being terminated for repeated class absences.

- Plaintiff *admitted* that he missed classes at the beginning of the Fall, 2009 semester and testified that "[he] was not there during the first two weeks of classes."

- Plaintiff *admitted* that Joseph Cheong, a person of Chinese and/or Asian ancestry/race, assumed Plaintiff's teaching duties in the Fall of 2009 following Plaintiff's termination.

- Plaintiff *admitted* that "Shepherd never said he was going to terminate Plaintiff and take other adverse actions because of his prejudice against Chinese people. . . ."

- Plaintiff *admitted* that he has no information indicating that Steve Robinette – MSU's only employee whom Plaintiff alleges was involved in any way in Plaintiff's termination – ever made any derogatory statements about persons of Chinese race or national origin, ever made any derogatory statements about Plaintiff, or had any reason to believe that Plaintiff's ancestry, race or national origin had anything to do with Plaintiff's termination.

- Plaintiff *admitted* that, in the fall of 2009, LNU employed at least six persons of Chinese ancestry as faculty members at the COIB (including Plaintiff), the entire staff at the COIB was Chinese, and the vast majority of students at the COIB are Chinese.

Notwithstanding these critical admissions, based on Plaintiff's prior submissions to this Court, the University believes that Plaintiff will seek to introduce testimony and evidence at trial

7

that is inadmissible, immaterial, and improper. The University therefore requests that this Court enter an order instructing Plaintiff and any witnesses to refrain from mentioning (whether directly or indirectly), interrogating, testifying, or referring to any of the topics listed below during *voir dire*, opening statement, closing argument, witness examination, or before the jury at any time during the trial of this matter without first obtaining permission of this Court outside the presence and hearing of the jury. Furthermore, the University moves for an order instructing and warning Plaintiff and each of his witnesses to strictly follow the order entered by this Court in connection with this Motion. Finally, the University requests that Plaintiff be precluded from mentioning or referring to this Motion in the presence of the jury.

## ARGUMENT

The first task of the Court in determining whether to admit or exclude evidence is to determine whether the proffered evidence is relevant to any claim or defense in the case. *See* Fed. R. Evid. 402. According to Federal Rule of Evidence 401, evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence, and (b) the fact is of consequence in determining the action."

Even if the proffered evidence is determined to be relevant, the Court may nonetheless exclude the evidence if the probative value of the evidence is outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. *See* Fed. R. Evid. 403. Under Rule 403, unfair prejudice "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *U.S. v. Condon*, 720 F.3d 748, 755 (8th Cir. 2013). Evidence may be unfairly prejudicial if "it tends to encourage the jury to find guilt [or liability] from

8

improper reasoning." *Id*. Exclusion of evidence due to concerns that it will confuse the jury is appropriate "if admission of the evidence would lead to litigation of collateral issues." *Id*. Ultimately, if evidence is deemed relevant, this Court must then balance the probative value of such evidence versus its prejudicial effect on the jury.

Finally, even if evidence is relevant and not found to be unduly prejudicial, it still cannot be otherwise inadmissible pursuant to the Federal Rules of Evidence (i.e., it cannot contain inadmissible hearsay, it cannot consist of improper character evidence, etc.). For the reasons discussed herein, evidence or testimony concerning the following topics should be excluded as they are irrelevant, unduly prejudicial and/or otherwise inadmissible.

**A.     Matters allegedly related to Plaintiff's discrimination claim.**

**1.     Evidence of statements allegedly made by or correspondence sent by individuals employed by LNU who work/worked at the COIB.**

In Plaintiff's MSJ Response, Plaintiff relied almost entirely on hearsay statements from various individuals who were employed by LNU and worked at the COIB, including Guangcai Dong, Phillip Whittkorn, Dan Shepherd, Mike Coutts, other COIB instructors and staff members, attorneys for LNU, etc. *See* Plaintiff's MSJ Response, Doc. 103, and Defendant's Motion to Strike and accompanying memoranda, Docs. 109, 110, and 119. The University expects Plaintiff will seek to admit similar evidence at trial.

Any out-of-court statements from individuals who were employed by LNU and worked at the COIB submitted for the truth of the matter (whether through the testimony of Plaintiff or other witnesses or through correspondence) constitute inadmissible hearsay that should not be admitted. Fed. R. Evid. 801, 802. If Plaintiff seeks admission of evidence that includes out-of-

court statements from these individuals, Plaintiff has the burden of establishing that such evidence is admissible. *See Raber v. Curry Ice & Coal of Carlinville, Inc.*, 2012 U.S. Dist. LEXIS 133930, at *4 (W.D. Mo. Sept. 18, 2012).

Plaintiff will likely argue that these individuals are employees or agents of MSU and that their statements may therefore be admitted pursuant to Federal Rule of Evidence 801(d)(2)(D). However, Plaintiff's characterization of these individuals as employees or agents of MSU is incorrect and significantly and inappropriately extends the reach of both Title VII's "joint employer" analysis and Rule 801(d)(2)(D). Such a conclusion distorts the relationship between the three separate entities at issue in this case – LNU, MSU, and the COIB – as well as the law governing these relationships.

Plaintiff claims that he suffered discrimination in China. Title VII was amended in 1991 to include the following language with regard to claims of discrimination on foreign soil:

"(c) Control of corporation incorporated in foreign country

(1) If an employer **controls** a corporation whose place of incorporation is a foreign country, any practice prohibited by section 703 or 704 [*42 USCS §§ 2000e-2* and *2000e-3*] engaged in by such corporation shall be presumed to be engaged in by such employer.

(2) **Section 703 or 704 [*42 USCS §§ 2000e-2* and *2000e-3*] shall not apply with respect to the foreign operations of an employer that is not controlled by an American employer.**

(3) For purposes of this subsection, the determination of whether an employer **controls a corporation** shall be based on—
(A) the interrelation of operations;
(B) the common management;
(C) the centralized control of labor relations; and
(D) the common ownership or financial control, of the employer and the corporation.

42 U.S.C. § 2000e-1(c) (emphasis added).

10

Plaintiff has not and cannot establish that MSU "controlled" LNU or was his employer for purposes of liability under Title VII with regard to alleged discrimination overseas. It is clear that LNU and MSU are entities that function and operate independently of one another. MSU is located in Missouri – LNU is located in China. They each manage their own affairs and employees. The two universities have separate payroll and insurance programs as well as separate personnel and administration. Furthermore, the labor relations at LNU and MSU are distinct. Disputes of LNU employees are handled by LNU. These universities clearly do not operate jointly.

Even with respect to the COIB, LNU and MSU maintain separate and distinct roles. While MSU has the authority to approve the instructors who will teach the curriculum (as is required for purposes of U.S. accreditation), LNU employs these individuals in accordance with Chinese law. LNU enters into contracts with faculty and pays them in Chinese currency. As to management, ownership, and finances, MSU and LNU do not share common officers or members on their respective governing boards. Furthermore, the two institutions maintain separate bank accounts. There is an account in China for the COIB, but only LNU employees have access to this account.

This case is unique in that Plaintiff specifically agreed in his employment contracts with LNU that LNU, not MSU, would "conduct direction, supervision and evaluation" of their work. Plaintiff testified that his contracts with LNU were "standard Chinese government issued contract[s]" that "allowed employers to request a foreign expert work visa on behalf of the foreign employee from the Chinese State Administration of Foreign Experts Affairs." Plaintiff's Dep., pp. 20-21. Plaintiff was required to enter into these contracts with LNU in order to obtain

11

a work visa in China, and by entering these contracts, Plaintiff contractually agreed that his work would be governed by LNU. The University has not located any other cases in which a "joint employer" relationship has been found under similar facts.

Moreover, in determining whether a "joint employer" relationship exists, the Eighth Circuit considers the same factors incorporated in Title VII, including the interrelationship of operations, whether there is common management between the two entities, whether there is centralized control of the labor relations, and whether there is common ownership or financial control. *Indus. Pers. Corp. v. NLRB*, 657 F.2d 226 (8th Cir. 2009). In addition to the above, other factors such as "the supervision of the employees' day-to-day activities, authority to hire or fire employees, promulgation of work rules and conditions of employment, work assignments, and issuance of operating instructions" are also often considered. *See G. Heileman Brewing Co., Inc. v. NLRB*, 879 F.2d 1526, 1531 (7th Cir. 1989). *See also Clinton's Ditch Co-op Co., Inc., v. NLRB*, 778 F.2d 132, 138-39 (2d Cir. 1985), *cert. denied*, 479 U.S. 814, 93 L. Ed. 2d 25, 107 S. Ct. 67 (1986) (emphasizing five factors: (1) hiring and firing; (2) discipline; (3) pay, insurance and records; (4) supervision; and (5) participation in the collective bargaining process). Plaintiff has not and cannot establish that MSU is the joint employer of all individuals employed by LNU who worked at the COIB.

It is undisputed that Guangcai Dong, the Dean of the COIB, was at all times an LNU employee and was never an employee of MSU. There is no evidence that MSU supervised Dean Dong's day-to-day activities, determined his salary, paid his salary, or took any other similar employer-employee actions with regard to him. Furthermore, though Dean Dong, a representative of LNU, collaborated with Steve Robinette, a representative of MSU, in operating

12

the COIB, this collaboration does not make Dean Dong an agent of MSU. Dean Dong did not have any authority to speak on behalf of MSU at any time. Admittedly, he may have been an agent of the COIB, but being an agent of the COIB does not also make him an agent of MSU. Plaintiff has not and cannot establish that Dean Dong was an employee or agent of MSU. As such, any emails from Dean Dong and any testimony regarding statements of Dean Dong are inadmissible hearsay that should be excluded.

Like Dean Dong, the Associate Deans of the COIB (Phillip Whittkorn, Dan Shepherd, and Michael Coutts) were at all times employees of LNU. Though Plaintiff argues that MSU was the joint employer of these individuals, claiming that Robinette governed their day-to-day activities, Plaintiff has not and cannot submit sufficient evidence to support this claim. Plaintiff has not met the requirements set forth in Title VII to establish that MSU "controls" the operations of LNU. Moreover, Plaintiff cannot establish that MSU was the joint employer of these LNU employees under any test – they all had contracts with LNU, they were paid by LNU, they worked in China at the COIB, and they never received any tax forms from MSU or entered any employment contracts with MSU. The Associate Deans collaboration with Robinette does not make them employees of MSU. At most, Plaintiff can only show that the COIB (not MSU) was their joint employer. Similarly, the Associate Deans were also not agents of MSU – they were not authorized to speak on behalf of MSU. Like Dean Dong, they were, again at most, agents of the COIB. The COIB is not a party to this litigation, and hearsay statements from employees or agents of the COIB should not be admitted pursuant to Rule 801(d)(2)(D).

Statements and correspondence from other LNU COIB instructors and staff members offered for the truth of the matter are also inadmissible hearsay. Plaintiff has not and cannot

13

offer any evidence that these individuals' day-to-day activities were governed by MSU or that they were agents of the same. Rather, the evidence demonstrates that, though MSU provided the instructors the curriculum for their classes (as is required for purpose of U.S. accreditation), their day-to-day work was governed by Dean Dong and the Associate Dean, both of whom (as discussed above) were LNU employees. Plaintiff's conclusory and unsupported statement that any individual who worked at the COIB is both an MSU and LNU employee does not make that in fact the case. The statements of LNU employees who worked at the COIB as instructors and staff members are clearly hearsay and should not be admitted or considered by this Court.

Based on Plaintiff's prior filings, the University believes that Plaintiff will attempt to testify regarding numerous conversations he had with the individuals listed herein, all of whom had employment contracts with LNU, worked at the COIB, and were in no way employees of MSU. The University anticipates that Plaintiff will also attempt to admit numerous emails from these same individuals. For the reasons discussed herein, this testimony and evidence is inadmissible hearsay and should be excluded.

> ### 2. Evidence of alleged absences of other COIB instructors and subsequent treatment or discipline.

According to the termination letter Plaintiff received from the COIB, Plaintiff was terminated for "repeated class absences." Second Amended Complaint, Doc. 42, ¶ 11. In an effort to establish that this reason was pretext for discrimination, Plaintiff argued in his MSJ Response that other faculty members also missed classes but were not terminated. MSJ Response, Doc. 103, p. 54. In particular, Plaintiff asserted that various Caucasian instructors, including Shawna Warner, Jill Boyles, Robert Nigoshian, Mike Coutts, Freddie Jennings, and

14

Jane Allwardt, were regularly absent or late for classes and were not disciplined or terminated. Plaintiff's Statement of Additional Disputed and Undisputed Material Facts ("PSADUMF"), Doc. 103, ¶ 55. The University thus anticipates that Plaintiff will attempt to testify regarding these allegations at trial. Admission of this evidence, however, would be inappropriate.

This kind of comparator evidence should only be admitted if Plaintiff can establish that the other instructors who allegedly missed classes were similarly situated to him. The "test for determining whether employees are similarly situated to a plaintiff is a rigorous one." *Bone v. G4S Youth Servs., LLC*, 686 F.3d 948, 956 (8th Cir. 2012). It is Plaintiff's burden to show that he and the instructors that he claims were also absent from classes were "similarly situated in all relevant respects." *Id.* That is, the employees "used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Id.*

Plaintiff cannot meet these stringent requirements applicable to claims of alleged similarly-situated employees. Plaintiff's conclusory and speculative statements that these absences occurred, that they were similar to Plaintiff's absences, and that Shepherd was aware of the absences is simply not sufficient to establish the admissibility of this information. Such speculation is similarly inappropriate at trial.

Furthermore, there is no evidence that Robinette had knowledge of or determined that *any* of the other COIB instructors identified by Plaintiff missed classes in the way that Plaintiff did and then, failed to take disciplinary action.[2] Moreover, there is no evidence that LNU's Dean of

---

[2] Plaintiff claims in his PSADUMF that Robinette was aware that a faculty member named Jennings was "skipping classes to go travelling." PSADUMF, Doc. 103, ¶ 55. Plaintiff, however, badly misstates the record – there is no

15

the COIB, Guangcai Dong, regarding the alleged comparators. There is not a scintilla of evidence that Dean Dong determined that any other faculty members missed classes in the way that Plaintiff did and yet failed to take disciplinary action. Plaintiff simply cannot identify any *specific* information concerning other instructors who missed classes.

In sum, testimony from Plaintiff or anyone else speculating as to other individuals' alleged absences, the knowledge of their supervisors, and any subsequent discipline is not proper comparator evidence, is not relevant to Plaintiff's claims, and would unnecessarily confuse the jury. As such, this evidence should not be admitted, and Plaintiff should be directed to refrain from referring either directly or indirectly to any alleged absences of other COIB instructors.

### 3. Evidence of the salary or pay of COIB instructors other than Plaintiff and any alleged disparate pay among such instructors.

Despite the fact that this case involves a claim that Plaintiff was terminated due to his race or national origin, Plaintiff has alleged in various court filings that disparity in pay existed at the COIB between some Chinese instructors at the COIB and other non-Chinese instructors. Plaintiff claimed in his summary judgment response that the COIB had a "well-known discriminatory policy of paying native Chinese instructors inequitably." MSJ Response, Doc. 103, p. 50. Testimony or evidence concerning this allegation should not be permitted for many reasons.

First, Plaintiff did not properly preserve this argument for trial – neither Plaintiff's

---

evidence in Plaintiff's Exhibit 57 that anyone missed classes in the way that Plaintiff did, nor is there any evidence indicating that Mr. Robinette concluded that another faculty member had missed classes, nor is there any evidence that Mr. Robinette failed to take action against other faculty members, if any, who missed classes. In addition, Exhibit 57 constitutes inadmissible hearsay. Plaintiff can present absolutely no information that Mr. Robinette ever determined that any other faculty member missed classes under circumstances similar to Plaintiff and then failed to take action.

Second Amended Complaint nor his answers to the University's interrogatories, which asked Plaintiff to identify all facts that he believed constituted direct or indirect evidence of any alleged discrimination, make any mention of an alleged discriminatory policy concerning pay. *See* Plaintiff's Second Amended Complaint, Doc. 42, and Exhibit B to Defendant's Reply to Plaintiff's MSJ Response, Doc. 108, Plaintiff's Answers to the University's Interrogatories, Interrogatory No. 3.

Furthermore, Plaintiff's pay disparity claim (like so many others) is wholly unsupported by any evidence other than Plaintiff's own speculative testimony. Plaintiff should not be permitted to testify at trial regarding matters about which he can only speculate.

Moreover, and most importantly, Plaintiff is not even claiming that he was paid unequally or that he was discriminated against with regard to his wages. MSJ Response, Doc. 103, p. 50. Thus, this claim has no relevance whatsoever to any claim Plaintiff is asserting in this case. As such, evidence concerning any discriminatory compensation policy is no way relevant to Plaintiff's claims in this case.

Permitting Plaintiff to introduce evidence relating to the pay of other Chinese faculty and staff would also unnecessarily lengthen the trial. The University would be required to attempt to explain the bases for compensation of other employees. But the compensation of other employees has no relevance to the claims asserted in this case.

Finally, any evidence of alleged inequitable pay would be highly prejudicial to the University and any probative value of such evidence would clearly be outweighed by its prejudicial impact. Such evidence would have a tendency to confuse a jury about Plaintiff's claims, and would suggest that the COIB engaged in a pattern and practice of discrimination.

17

But this is not a "pattern and practice" case – it is only a disparate treatment case involving Plaintiff's termination. This evidence should be excluded.

### 4. Evidence of alleged stray remarks of Dan Shepherd.

In Plaintiff's MSJ Response, Plaintiff cited various stray remarks allegedly made by Shepherd concerning individuals other than Plaintiff in his attempt to establish his *prima facie* case of race or national origin discrimination. For example, in his MSJ Response, Plaintiff claimed Shepherd has made the following statements:

- After a confrontation with another COIB instructor, Plaintiff claims he heard Shepherd say he "wouldn't take shit from a Chinese fucker." PSADUMF, Doc. 103, ¶ 46.

- Plaintiff claims that Shepherd said "if [he] could, [he] would kill [Kong]. If Chinese law allowed it, [he] would kill him." PSADUMF, Doc. 103, ¶ 46.

- Plaintiff claims that Shepherd referred to a Chinese staff member at the COIB as a "monkey or a dog." PSADUMF, Doc. 103, ¶ 46.

- Plaintiff claims that Shepherd referred to another Chinese staff member at the COIB as a "sassy Chink with an attitude." PSADUMF, Doc. 103, ¶ 46.

- Plaintiff claims that Shepherd said "all you fucking Chinese people are causing me trouble" and that "all you fucking Chinese people are driving me crazy." PSADUMF, Doc. 103, ¶ 47.

- Plaintiff claims that Shepherd referred to China's legal system as a "piece of shit." PSADUMF, Doc. 103, ¶ 47.

The University anticipates that Plaintiff will seek to testify regarding these statements at

trial.  However, testimony and other evidence concerning these statements should not be admitted.  Not only do the above statements constitute inadmissible hearsay, *see supra* section 1, but they also have no probative value to Plaintiff's claim that he was terminated due to his Chinese race or national origin.

Some of the alleged comments are actually neutral as to race or national origin and/or indicate no discriminatory animus against people of Chinese race or national original.  For example, calling someone a "monkey or a dog" does not indicate any bias or discriminatory animus against a person of Chinese race or national origin, nor do comments or opinions about the Chinese legal system and/or Chinese law.  With regard to the remaining alleged statements attributed to Shepherd, Plaintiff does not claim, nor could he, that they were directed towards him or related to the decision-making process concerning his termination.

Comments unrelated to the "decisional process" such as those attributed by Plaintiff to Shepherd fall within the "stray remarks" category even if they are made by persons involved in the decision-making process.  *See, e.g., Twymon v. Wells Fargo & Co.,* 462 F.3d 925, 934 (8th Cir. 2006).  None of the alleged comments by Shepherd, singly or in the aggregate, raise an inference or suggest in any way that Plaintiff was targeted for termination because of his race or national origin in violation of Title VII, and the probative value of these statements is minimal at best.

The prejudicial effect of such statements, however, is considerable.  Though courts have long held that Title VII is not a not "a general civility code for the American workplace" and thus, are adept at distinguishing between evidence of discrimination and stray remarks, a jury is unlikely to be able to make those same distinctions.  *Oncale v. Sundowner Offshore Servs., Inc.,*

19

523 U.S. 75, 80 (1998). Admittedly, these alleged statements could be considered inappropriate and boorish, and it is highly likely that a jury could allow their emotions and feelings about Shepherd for allegedly making such statements cloud their judgment as to the true task at hand – determining whether Plaintiff was terminated due to his Chinese race or national origin. Any minimal probative value that these statements may have are greatly outweighed by the prejudicial impact of such evidence. As such, any testimony or evidence concerning these statements should be excluded.

        **5.**     **Evidence of any alleged misconduct of Dan Shepherd unrelated to Plaintiff's termination or employment, including evidence relating to any alleged relationship between Shepherd and a student, evidence relating to Shepherd's relationship with other COIB instructors and staff, and evidence relating to Shepherd's resignation as Associate Dean of the COIB.**

In his MSJ Response, Plaintiff included various allegations concerning Shepherd's performance as an Associate Dean of the COIB. For example, in paragraph 46 of his PSADUMF, Plaintiff accuses Shepherd of "refus[ing] to hold the required minimum number of office hours, post his office hour schedule in front of his cubicle, notify [Charlie] Kong when he should not show up for classes (absent), and follow other rules." Plaintiff also describes a confrontation that allegedly occurred with Charlie Kong, another instructor at the COIB. PSADUMF, Doc. 103, ¶ 46. Later, Plaintiff makes the conclusory statement that "Shepherd did not get along with nearly everyone on the Chinese staff." PSADUMF, Doc. 103, ¶ 48. Plaintiff has also alleged that "Shepherd was having an improper relationship with one of his students and permitting that student to sleep in his house overnight and break[] curfew." PSADUMF, Doc.

103, ¶ 59.  Finally, Plaintiff claims that, prior to his appointment as the Associate Dean of the COIB, Shepherd missed classes.  PSADUMF, Doc. 103, ¶ 55.

The vast majority of these allegations were supported only by Plaintiff's self-serving affidavit, rather than independent, admissible evidence.  *See* Defendant's Motion to Strike and supporting memorandum, Docs. 109, 110, and 119.  Regardless, the University anticipates that Plaintiff will seek to testify regarding these matters during trial.  Such testimony or evidence, however, would be inappropriate and should be excluded – it is in no way relevant to Plaintiff's claims against MSU and the admission of such testimony or evidence would unfairly prejudice the University.

As an employee of LNU at the COIB, rather than an employee of MSU, Shepherd's actions in all regards are not relevant to this case.  *See supra* section 1.  However, even if the Court disagrees with this notion, testimony or evidence regarding whether Shepherd got along with others, whether he posted his office hours and followed other COIB rules, and whether he allegedly had an inappropriate relationship with a student as well as testimony about his resignation of employment from the COIB and the circumstances surrounding such resignation are simply not relevant to Plaintiff's claim that he was terminated due to his Chinese race or national origin.  These allegations in no way indicate any animus against Plaintiff or individuals of Chinese race or ancestry and do not have any tendency to make a fact of consequence more or less probable.

To the extent that Plaintiff argues that this testimony should be admitted to demonstrate Shepherd's character or to show that Shepherd acted similarly in dealing with Plaintiff as he did

21

during these prior alleged incidents, such evidence cannot be admitted for this purpose.  *See* Fed.

R. Evid. 404(a)(1) and (b)(1).

To the extent that Plaintiff argues that testimony and evidence concerning Shepherd's alleged misconduct is relevant to establishing that Robinette treated individuals outside of Plaintiff's protected class (Chinese race or ancestry) more favorably, such evidence is permissible only if Plaintiff can establish that the employee at issue (here, Shepherd) was "similarly situated in all relevant respects" to Plaintiff.  *Bone*, 686 F.3d at 956 (8th Cir. 2012). Much of the alleged misconduct of Shepherd – that he did not post his office hours, that he did not get along with others, or that he had an inappropriate relationship with a student – is in no way similar to the reason for Plaintiff's termination – repeated class absences – and Plaintiff cannot show otherwise.  As such, testimony and evidence related to these matters should not be admitted for purposes of comparison.

Plaintiff does allege that Shepherd missed classes before he was the Associate Dean. PSDUMF, Doc. 103, ¶ 55.  This allegation, like so many others, is based solely on Plaintiff's beliefs.  Plaintiff has no knowledge or evidence regarding whether Phillip Whittkorn (presumably, the Associate Dean at the time these absences allegedly occurred), Dean Dong, or Robinette were informed of these alleged absences and whether there were any other mitigating circumstances.  Plaintiff should not be permitted to testify regarding general allegations about which he has no detail or other information.  Furthermore, even if Whittkorn was informed of Shepherd's absences, Plaintiff cannot rely on how Whittkorn chose to address that issue with Shepherd compared to how Shepherd addressed the same issue with Plaintiff as evidence of disparate treatment, as the two incidents (one of which we have no information about other than

22

that Plaintiff claims it occurred) involved different supervisors.

Finally, even if Plaintiff could establish that evidence of any alleged misconduct by Shepherd is somehow relevant to Plaintiff's claims, the probative value of such evidence would be severely outweighed by its prejudicial impact. Admission of such evidence would denigrate Shepherd and paint him in a bad light before the jury. Any suggestion that Shepherd was involved with one of his students could certainly garner negative opinions from the jury, as could suggestions that he did not get along with others and/or did not follow other rules. This case is not about whether Shepherd was a good Associate Dean, a good instructor, or a good person. It is also not about why he resigned from his position at the COIB. Allowing testimony or other evidence concerning these matters could unfairly prejudice the jury against Shepherd and MSU.

The testimony and evidence concerning the matters detailed herein are both irrelevant and prejudicial. As such, the University respectfully requests that such testimony and evidence be excluded.

    6.    **Evidence of any alleged misconduct of Mike Coutts, including evidence relating to any alleged claims of sexual harassment or any alleged relationship between Coutts and a student.**

Similar to Plaintiff's allegations against Shepherd, Plaintiff has also accused Mike Coutts of misconduct that is unrelated to Plaintiff's termination and his claims of discrimination. Coutts was the interim Associate Dean after Shepherd resigned and the individual who informed Plaintiff of his termination. In paragraph 56 of his PSADUMF, Plaintiff asserts that Coutts "allegedly sexually harassed (stalked) his female students" and then "sought retribution" against a student for refusing his advances. Plaintiff also alleges that Coutts accused Plaintiff of blackmailing another instructor and sexually harassing another student and threatened to report

23

Plaintiff to the Chinese authorities. PSADUMF, Doc. 103, ¶¶ 41-42. The University anticipates that Plaintiff will attempt to present testimony concerning these matters at trial. These matters, however, should be excluded as they are not relevant and are prejudicial to the University.

Again, Mike Coutts was an employee of LNU at the COIB, not an employee of MSU. Thus, his actions as an employee of LNU are not relevant to this case, which is against MSU. *See supra* section 1. However, even if this were not the case, Plaintiff has admitted that Shepherd was primarily responsible for Plaintiff's termination and that Robinette made the final decision. DSUMF, Doc. 65, ¶¶ 53, 60 and Plaintiff's MSJ Response, Doc. 103, p. 50. As such, any conduct of Coutts is simply not relevant to Plaintiff's claim that he was terminated because of his Chinese race or national origin. Plaintiff has essentially admitted that Coutts was not involved in that decision.

To the extent that Plaintiff argues that testimony and evidence concerning Coutts' alleged misconduct is relevant to establishing that Shepherd and Robinette treated individuals outside of Plaintiff's protected class (Chinese race or ancestry) more favorably, again, such evidence is permissible only if Plaintiff can establish that the employee at issue (here, Coutts) was "similarly situated in all relevant respects" to Plaintiff. *Bone*, 686 F.3d at 956. The alleged misconduct of Coutts – that he allegedly sexually harassed or stalked a student or that the he allegedly threatened Plaintiff or accused Plaintiff of blackmail or other inappropriate conduct – is in no way similar to the reason for Plaintiff's termination – repeated class absences – and Plaintiff cannot show otherwise. As such, testimony and evidence concerning the matters discussed herein may not be admitted as comparator evidence.

Even if Plaintiff could somehow establish the relevancy of Coutts' alleged misconduct,

24

which he cannot, evidence and testimony concerning such issues should still be excluded as the probative value of such evidence would be significantly outweighed by the prejudicial effect that allowing testimony concerning the alleged misconduct would cause. A jury could certainly be unfairly prejudiced against Coutts (and thereby MSU) if there is a suggestion that he sexually harassed a student or made other aggressive or inappropriate comments to Plaintiff after his termination. Furthermore, it is possible that the jury could confuse the issues of the case, and instead of focusing on whether Plaintiff has established his claim of national origin or race discrimination, focus on whether Coutts did, in fact, engage in sexual harassment or the alleged other conduct, as Plaintiff contends.

For all of the reasons discussed herein, testimony and evidence relating to any alleged misconduct by Coutts should not be permitted at trial.

7. **Evidence of any alleged misconduct of other LNU employees who worked as COIB instructors unrelated to missing classes or absenteeism.**

In addition to asserting that other COIB instructors missed classes and were not disciplined or terminated, *see supra* section 2, at the summary judgment stage of the case, Plaintiff also accused other COIB instructors of other types of alleged misconduct. For example, Plaintiff asserted that COIB instructor Robert Gard used illegal substances at school and was often under the influence of alcohol during class. PSADUMF, Doc. 103, ¶ 55. Plaintiff further alleged that Freddie Jennings, another COIB instructor, violated the "student-teacher boundary." *Id.* Plaintiff's apparent strategy in this case is to disparage any and all individuals associated with the COIB.

Evidence of this alleged misconduct, however, should not be admitted at trial. Such claims are entirely based on Plaintiff's own speculation, and they are in no way relevant to Plaintiff's claims that he was terminated due to his Chinese national origin or race. Furthermore, Plaintiff can make absolutely no showing that this alleged misconduct (if true) is at all similar to the reasons for his termination (repeated class absences). Introducing such tangential and collateral evidence would only serve to confuse and distract the jury from the issues in this case. As such, this irrelevant and highly prejudicial evidence should be excluded.

        **8.**     **Evidence regarding the alleged improper termination or non-renewal of other LNU employees who worked as COIB instructors.**

Plaintiff may also attempt to introduce evidence concerning the termination or non-renewal of other COIB instructors. For example, in the affidavit from Frank Manuel submitted with Plaintiff's MSJ Response, Manuel alleges that he was non-renewed for trying to protect a student from sexual harassment and for helping a student who had been accused of cheating. Exhibit 5 to Plaintiff's MSJ Response, Doc. 103. In addition, as part of discovery, Plaintiff produced several emails from former COIB instructors, including Frank Manuel, Imran Zeb, and Victoria Morris-Ott, discussing the circumstances surrounding their separation of employment from the COIB and speculating as to the reasons for such separation.

Admission of these emails and any other evidence about the circumstances surrounding the termination and/or non-renewal of these other instructors is both irrelevant to Plaintiff's claims and highly prejudicial to the University. Plaintiff has not asserted a claim of discrimination based on any ground other than his Chinese race or national origin. To the University's knowledge, none of the individuals identified above are of Chinese race or national

origin. As such, the circumstances surrounding their terminations or non-renewals and speculation concerning the reasons for those decisions are no way relevant to Plaintiff's claim that he was terminated on the basis of his race or national origin. Any testimony concerning the termination or non-renewal of these instructors would only serve to confuse and/or distract the jury. In fact, admission of such evidence could certainly lead to litigation of collateral issues (i.e., whether these instructors were properly terminated). The terminations and/or non-renewals of other non-Chinese instructors are not at issue in this case, and this irrelevant evidence should not be admitted.

9.      **Evidence regarding any complaints from current or former students or instructors regarding the COIB, LNU, or MSU that are unrelated to Plaintiff's claim that he was terminated due to his Chinese race or national origin.**

In Plaintiff's prior submissions to this Court as well as in his discovery responses to the University, Plaintiff has made a number of allegations (many of which are otherwise detailed herein) and/or produced documents relating to complaints from other COIB instructors and even some COIB students regarding issues or concerns about the operation of the COIB. These complaints, however, are unrelated to Plaintiff's claim that he was terminated due to his Chinese race or national origin. For example, Plaintiff through his submissions has suggested that students were falsely accused cheating (*see* Exhibit 5 to Plaintiff's MSJ Response, Doc. 103), that students were sexually harassed, that other instructors were non-renewed, etc.

Any evidence relating to complaints from other individuals about the COIB, or MSU more generally, that are unrelated to Plaintiff's particular claims in this case are irrelevant, lacking in any probative value, and highly prejudicial to the University. Admission of such

27

evidence would unfairly place the COIB, MSU, and/or LNU in a negative light and would distract the jury from the issues in this case. As such, evidence of such complaints should be excluded.

        **10.**     **Evidence of Plaintiff's performance as an instructor at the COIB unrelated to missing classes or absenteeism.**

In his MSJ Response, Plaintiff argued that he was a good instructor with positive performance reviews from his students and prior COIB administrators, including Yongwei Zhang and Phillip Whittkorn. MSJ Response, Doc. 103, pp. 44-45. In support of these arguments, Plaintiff submitted a thank-you note allegedly from Phillip Whittkorn, student evaluations from previous years, a petition allegedly signed by his former students, and emails of support from his former students. *See* Exhibits 28-32 to Plaintiff's MSJ Response, Doc. 103. The University anticipates that Plaintiff will attempt to present this evidence as well as testimony at trial regarding his prior performance. This evidence, however, should not be admitted – much of it constitutes inadmissible hearsay, it is irrelevant to Plaintiff's claims in this case, and it is unduly prejudicial in that it seeks to unfairly bolster Plaintiff's image before the jury.

The thank-you note from Phillip Whittkorn (Exhibit 29 to Plaintiff's MSJ Response, Doc. 103) constitutes inadmissible hearsay, *see supra* section 1, but more importantly, it provides no details regarding Plaintiff's performance. It merely includes vague expressions of gratitude. This note has absolutely no probative value to Plaintiff's case, and the only purpose for seeking to admit this evidence would be to paint Plaintiff in a positive light before the jury.

The student evaluations (Exhibit 28 to Plaintiff's MSJ Response, Doc. 103) are similarly inadmissible and irrelevant. These evaluations contain only the opinions of Plaintiff's former

students during previous semesters. These opinions are in no way relevant to why Plaintiff was terminated in the Fall of 2009. In addition, these evaluations contain inadmissible hearsay. *See* Defendant's Motion to Strike and supporting memoranda.

With regard to the student emails of support and the student petition (Exhibits 31-32 to Plaintiff's MSJ Response, Doc. 103), this evidence should also be excluded. Plaintiff has admitted that both contain hearsay. *See* Plaintiff's Response to Defendant's Motion to Strike, Doc. 117. Furthermore, the student emails make no mention of Plaintiff's attendance record, but instead, include vague expressions of support and goodwill that were sent in response to a mass email Plaintiff sent to his students following his termination. Finally, both the student emails and the student petition severely lack any indicia of authenticity or trustworthiness.

Plaintiff's overall performance as an instructor at the COIB prior to the Fall of 2009 is not at issue in this case. The University does not contend that Plaintiff was terminated because he was a poor instructor. Rather, Plaintiff was terminated for repeated class absences. As such, any evidence of or testimony regarding Plaintiff's performance that is unrelated to the reason for his termination (repeated class absences), including the evidence detailed herein, should not be admitted. Such evidence is both irrelevant and would serve only to unfairly boost the jury's image of Plaintiff.

### 11. Evidence of MSU's internal audit of the COIB and any other articles, publications, evidence or testimony detailing operational concerns or problems with the COIB.

Consistent with his attempt to denigrate any and all individuals involved in the operation of the COIB, including Robinette, Shepherd, Coutts, and other instructors, the University also

anticipates that Plaintiff will seek to testify and/or admit evidence detailing operational concerns or problems with the COIB that are unrelated to Plaintiff's claims.

With his MSJ Response, Plaintiff submitted an internal audit report completed by MSU and dated January 30, 2012. Exhibit 1 to Plaintiff's MSJ Response, Doc. 103. This report highlights some concerns with the operation of the COIB and provides suggestions for improvement. For example, the report notes concerns with timely budget approval and the allocation of program expenses. These issues discussed in the report are in no way related to Plaintiff's claims against the University and would only serve to confuse the jury.

Plaintiff also produced various articles about the COIB, some of which are highly critical, noting that tuition is five times higher than typical Chinese universities, that many of the students struggle to succeed in an English-only environment, that textbooks arrive after classes begin, etc. Again, these types of concerns or problems with the operation of the COIB are not relevant to Plaintiff's claim that he was terminated because he is Chinese and admission of such articles would be prejudicial to the University. As such, this type of evidence should be excluded.

### 12. Audio Recordings.

In response to the University's discovery requests, Plaintiff produced numerous audio recordings of various conversations, some which do not even appear to have been recorded by Plaintiff. It is unclear to the University whether or how Plaintiff intends to use these recordings at trial. Regardless, the recordings produced by Plaintiff as part of discovery in this case should not be admitted for many reasons.

First, the quality of the recordings as a whole is incredibly poor. In most cases, only portions of the conversations recorded can be understood. Some of the recordings even include

30

communications in a foreign language (perhaps, Chinese). In addition, in some cases, the participants in the recorded conversation are not identified. Plaintiff must be able to lay a proper foundation for the admission of these recordings, *see U.S. v. McMillian*, 508 F.2d 101, 103 (8th Cir. 1974), and the University contends that Plaintiff will not be able to do so.

In addition, many of the recordings are also irrelevant to Plaintiff's claims. For example, one of the recordings produced by Plaintiff appears to be a recording of academic appeal hearings for students. This recording, which contains private, sensitive information concerning students of the COIB, is in no way relevant to Plaintiff's claim that he was terminated due to his race or national origin. Surreptitiously recording these hearings was highly inappropriate, and admission of such recordings at trial would be similarly improper.

The remaining recordings fall within other topics discussed herein. There are many recordings of conversations between Plaintiff and LNU employees, including Dean Dong, Dan Shepherd, and Mike Coutts. These recordings contain hearsay, *see supra* section 1, and should not be admitted. Some of the recordings also contain negotiations and settlement discussions regarding Plaintiff's claims against LNU and the COIB. As such, these recordings should not be admitted pursuant to Federal Rule of Evidence 408.

The recordings lack probative value and are incredibly prejudicial to the extent that the full conversation cannot be heard or understood. They are also unauthenticated. For these reasons, the University respectfully requests that such recordings be excluded at trial.

**B. Matters related to Plaintiff's damages claims.**

    **1. Evidence of claims for back pay and housing allowances.**

In response to the University's discovery requests, Plaintiff indicated that he intends to

seek back pay and housing allowances for both the remainder of the term of his 2009-2010 employment contract and for subsequent years up to December 31, 2011. Exhibit B to Defendant's Reply to Plaintiff's MSJ Response, Doc. 108, Plaintiff's Answers to the University's Interrogatories, Interrogatory No. 17. In particular, Plaintiff indicated that he intends to seek $23,000 in back pay and $2,177 for the housing allowance for the remainder of the 2009-2010 academic year and $30,000 per year in back pay and $2,900 per year for the housing allowance for all subsequent years up to December 31, 2011. Evidence relating to these claimed damages should not be admitted at trial for many reasons.

First, though Plaintiff provided the amount he intends to seek for such claimed damages, he has failed to provide a method or formula for how he came to these amounts and to make available any documents on which these amounts are based, as required by Federal Rule of Civil Procedure 26(a)(1)(A)(iii). *See also Seubert v. FFE Transp. Servs.*, 4:11CV01651m 2013 U.S. Dist. LEXIS 30310, at *2 (E.D. Mo. March 6, 2013) (noting that the plaintiff failed to comply with Rule 26(a)(1) because he did not provide a method or formula for calculation of lost profits). In fact, Plaintiff's Rule 26(a) disclosures state that he will supplement his disclosures regarding his damages once he calculates his back pay. However, Plaintiff never provided this necessary supplementary information as promised.

Federal Rule of Evidence 37(c)(1) states that, if a party fails to provide information as required by Rule 26(a)(1), the party is not allowed to use that information at trial, unless the failure was substantially justified or is harmless. Plaintiff can present no justification for his complete failure to provide any information concerning how he determined the amounts of back pay and housing allowances that he claims. He was certainly not waiting for any discovery from

32

the University that would bear on this issue. This case has been pending for more than three and a half years, and it would be unduly prejudicial to the University to allow Plaintiff to present such information at this late stage in the litigation. This Court has discretion to determine the appropriate remedy for Plaintiff's failure in this regard, and other courts have held in similar circumstances that exclusion of such evidence is appropriate. *See e.g., TCF Inventory Fin., Inc. v. Northshore Outdoor, Inc.*, No. 1:11CV85, 2012 U.S. Dist. LEXIS 91997 (N.D. Ohio July 3, 2012). Plaintiff's failure to comply with Rule 26(a)(1)(A)(iii) should result in exclusion of any evidence related to his claims for back pay and/or housing allowances.

However, even if this Court concludes that exclusion of all evidence relating to Plaintiff's claims for back pay and housing allowances is not appropriate pursuant to Rule 37(c)(1), evidence relating to Plaintiff's claims for back pay and housing allowances for any period of time after the term of his 2009-2010 employment contract should still be excluded. Plaintiff admitted during his deposition that his appointment as an instructor at the COIB was year-to-year and that, at the conclusion of the term of each annual contract, Plaintiff's employment at the COIB could end. Exhibit C to Defendant's Suggestions in Support of its Motion for Summary Judgment, Doc. 65, Plaintiff's Deposition, p. 37. He has thus admitted that he had no right to future employment at the COIB following the term of his annual contract, which for the 2009-2010 academic year ended on June 30, 2010. As such, evidence supporting any claims for back pay or a housing allowance for any period of time after that date should not be admitted.

      **2.**     **Evidence, inquiry, or comment regarding claims for prejudgment interest on an award of back pay and/or compensation to off-set any alleged adverse tax consequences due to a lump sum payment of back pay.**

With regard to his claims for back pay, Plaintiff has also indicated that he intends to requests prejudgment interest and compensation to off-set any alleged adverse tax consequences due to a lump sum payment of back pay. Second Amended Complaint, Doc. 42, ¶ 30c. These types of awards, however, are equitable and thus, within the discretion of the Court, not the judge, to determine. *See Thomas v. Bakery, Confectionery & Tobacco Workers Int'l Union, Local #433*, 982 F.2d 1215, 1221 (8th Cir. 1992) (noting that, like attorneys' fees, an award of prejudgment interest is within the discretion of the trial judge) and *Powell v. N. Ark. College*, 2009 U.S. Dist. LEXIS 59826, *4 (W.D. Ark. 2009), *citing to Arneson v. Callahan*, 128 F.3d 1243, 1247 (8th Cir. 1997) (finding that tax enhancement damages are "analogous to the prejudgment remedy"). As such, any evidence, inquiry, or comment regarding these claimed damages should not be mentioned in the presence of the jury.

Furthermore, the University contends that, should Plaintiff prevail on his claim of discrimination against the University, he should not be awarded prejudgment interest, as such an award would unjustly reward Plaintiff for his dilatoriness in pursuing this action. *See e.g.*, *Stroh Container Co. v. Delphi Indus., Inc.*, 783 F.2d 743, 752-53 (8th Cir. 1986). Similarly, Plaintiff has not and cannot establish the tax consequences of any award. *Hukkanen v. Int'l Union of Operating Eng'rs, Hoisting & Portable Local No. 101*, 3 F.3d 281, 287 (8th Cir. 1993).

### 3. Evidence of claims for front pay.

In his Second Amended Complaint, Plaintiff included a request for front pay in his prayer for relief. Second Amended Complaint, Doc. 42, ¶ 30c. While a claim for back pay is a matter for a jury to consider, front pay is an equitable remedy for the Court to determine. *Hukkanen*, 3 F.3d at 286. As such, testimony or argument concerning any claims for front pay should not be

34

mentioned in the presence of the jury.

Furthermore, Plaintiff did not disclose that he is seeking front pay in his Rule 26(a) initial disclosures or in his interrogatory answers. Exhibit B to Defendant's Reply to Plaintiff's MSJ Response, Doc. 103, Plaintiff's Answers to the University's Interrogatories, Interrogatory No. 17. He has not stated the amount of front pay he is seeking as required by Rule 26(a)(1), nor has he provided the basis for an award of front pay. Fed. R. Civ. P. 26(a)(1)(iii). As such, for the same reasons discussed above in section 1, Plaintiff should be precluded from seeking front pay in this matter pursuant to Rule 37(c)(1).

Finally, even if Plaintiff were to succeed on his discrimination claim against the University, the University contends that Plaintiff cannot establish any long-term effects of his termination from the COIB and thus, is not entitled to an award of front pay. As noted above, Plaintiff has admitted that he had no right to future employment at the COIB following the term of his annual contract, which ended on June 30, 2010. Furthermore, Plaintiff cannot establish that he would still be working at the COIB if he had not been terminated. In fact, prior to his termination, Plaintiff had discussed with various administrators his intent to leave the COIB. In addition, since his termination, Plaintiff has pursued an entirely different professional path - Plaintiff returned to school in August, 2011, earned a Master's in Business Administration, and to the University's knowledge, currently works as a consultant in Madison, Wisconsin. His behavior in no way suggests that he would have remained at the COIB as an adjunct instructor, and thus, he should not be awarded any front pay if he prevails on his discrimination claim against the University.

**4.  Evidence regarding punitive damages.**

35

In his Second Amended Complaint, Plaintiff indicated that he intends to seek punitive damages against the University. Second Amended Complaint, Doc. 42, ¶ 18. However, according to 42 U.S.C. § 1891a(b)(1), the complaining party in a Title VII case may not recover punitive damages against a government, government agency, or political subdivision. MSU is a public university that was created by Missouri statute and therefore, constitutes an agency of the state. *Id.*, ¶ 2 and Defendant's Answer to Plaintiff's Second Amended Complaint, Doc. 43, ¶ 2. *See also* Defendant's Motion for Judgment on the Pleadings, Doc. 133. Accordingly, Plaintiff cannot recover punitive damages from the University.

In addition, Plaintiff failed to list punitive damages as a category of damages he is seeking in the disclosures required by Rule 26(a)(1). As such, evidence of such damages should also be excluded pursuant to Rule 37(c)(1). For all of these reasons, Plaintiff should not be permitted to introduce any evidence relating to Plaintiff's claim that the University's actions were "outrageous, willful, wanton, fraudulent and malicious manner and in evil reckless disregard for and indifference to plaintiff's rights." Second Amended Complaint, Doc. 42, ¶ 18.

      5.      **Evidence of Plaintiff's attorneys' fees and court costs incurred as part of the litigation he pursued against LNU in China.**

In his interrogatory answers, Plaintiff indicated that he intends to seek recovery of the attorneys' fees and court costs he incurred as part of his breach of contract claim against LNU in China. Exhibit B to Defendant's Reply to Plaintiff's MSJ Response, Doc. 108, Plaintiff's Answers to the University's Interrogatories, Interrogatory No. 17. Plaintiff should not be

permitted to introduce evidence related to such claims, as there is no basis for awarding fees and costs incurred from an entirely distinct legal action against a separate entity in a different country.

### 6. Evidence of Plaintiff's financial condition.

Plaintiff may attempt to introduce evidence of his poor financial condition. It is well established that a Plaintiff's financial condition is not admissible in a trial for damages. In *McCormack v. Capital Elec. Constr. Co.*, 35 S.W.3d 410, 416 (Mo. Ct. App. 2000):

> Evidence of a plaintiff's poverty or comments related thereto are generally condemned. *Cole ex rel. Cole v. Warren County R-III School Dist.*, 23 S.W.3d 756, 759, 2000 WL 719451 (Mo. Ct. App. 2000) (citing *Firestone v. Crown Center Redevelopment Corp.*, 693 S.W.2d 99, 105 (Mo. 1985)).

Any evidence of Plaintiff's current financial condition is not only irrelevant; it would be highly prejudicial to Defendants, as it would clearly be offered solely to create sympathy for Plaintiff.

### 7. Evidence regarding the University's insurance coverage.

Defendant moves that this Court prohibit Plaintiff from presenting or attempting to present any testimony or other evidence regarding the University's participation in any insurance policy or self-insurance fund for indemnification or defense for any liability arising out of this case. Fed. R. Evid. 411; *see also Stanford v. Morgan,* 588 S.W.2d 89 (Mo. Ct. App. 1979).

### C. Miscellaneous.

### 1. Conclusory statements and speculation, inquiry, or comment about the intent or state of mind of others.

As noted in the University's Motion to Strike, in Plaintiff's MSJ Response and his affidavit, Plaintiff repeatedly included conclusory and speculative statements. In particular, Plaintiff made numerous conclusions about the intent of others. *See, e.g.,* PSADUMF, Doc. 103,

37

¶ 34 ("Shepherd *deliberately* terminated and/or recommended to MSU and Robinette to terminate Plaintiff's contract"), ¶ 35 ("During the trial, Defendant presented … two of Plaintiff's emails that were *deliberately* mistranslated"), ¶ 36 ("his courses were *deliberately* scheduled by Shepherd at the same time as faculty meetings"), ¶ 45 ("MSU *intentionally* tried to employ more Chinese graduate students"), ¶ 61 ("Shepherd *deliberately* left Plaintiff out on some email communications"), ¶ 62 ("Shepherd *deliberately* attempted to embarrass and humiliate Plaintiff"), and ¶ 74 ("Shepherd and Coutts *conspired to fabricate* Plaintiff's absences").

These statements are wholly inappropriate, and the University respectfully requests that Plaintiff be informed that his testimony may not include any such conclusory statements or speculation as to the intent of others. Furthermore, to the extent that Plaintiff is permitted to present his testimony at trial in the form of a statement, rather than the typical question and answer format, the University respectfully requests that it be provided an outline of the topics to be addressed in such statement so that the University will have the opportunity to object to such testimony prior to the time it is presented to the jury.

### 2. Inquiry or comment regarding attorney-client matters.

During discovery, Plaintiff attempted to discover and even asked the court to compel production of privileged communications between counsel for the University and various administrators and faculty members at the University about Plaintiff that occurred after Plaintiff was terminated and had threatened legal action against both MSU and LNU. This Court declined Plaintiff's request to compel discovery of these communications.

38

In accordance with this prior ruling, Defendant moves that Plaintiff be precluded from inquiring into any matters that have transacted between the University's attorneys (including its general counsel) and administrators and faculty members involved in responding to or addressing Plaintiff's threats of legal or administrative action and/or involved in preparing for any related litigation, including conversations and all transaction connected thereto. *See Biben v. Card,* 119 F.R.D. 421, 426 (W.D. Mo. 1987) ("The attorney-client privilege, which exists to encourage full and frank communication between attorneys and their clients, is the oldest of the privileges for confidential communication known to the common law . . . Extension of the attorney-client privilege serves public ends by encouraging clients in need of legal advice to make full disclosure to their attorneys without fear that such communications will be discoverable."); *McCaffrey v. Estate of Brennan,* 533 S.W.2d 264, 267 (Mo. Ct. App. 1976) ("A client has a privilege to refuse to disclose, and to prevent others from disclosing, confidential communications between himself or his representative and his lawyer or his representative.)

Any effort by Plaintiff to imply, through questioning or argument, that the University improperly withheld any documents or information pursuant to the attorney-client privilege is not only completely baseless but also highly prejudicial.

### 3. Evidence of settlement offers and responses and discussions related thereto.

The parties unsuccessfully mediated this case and have unsuccessfully attempted to settle this case. In addition, Plaintiff engaged in various settlement discussions with LNU and MSU officials prior to filing his breach of contract case against LNU and the present case against MSU. Pursuant to Federal Rule of Evidence 408, any evidence surrounding compromise and

39

offers to compromise is not permitted. As such, Defendant moves that this Court prohibit any reference to offers of settlement and responses thereto, except when this Court makes a finding that settlement is relevant to an issue to be decided by the jury.

### 4.     Inquiry or comment about the testimony of other witnesses.

It is improper for one witness to comment on the testimony of another witness. *Nichols v. American Nat'l Ins. Co.,* 154 F.3d 875, 883-884 (8th Cir. 1998) (witnesses may not testify regarding credibility or truthfulness of other witnesses; jury alone assesses testimony); *Stone v. City of Columbia,* 885 S.W.2d 744, 746 (Mo. Ct. App. 1994) (witnesses should not give their opinions of truth of statements of other witnesses). If a fact is in issue, the witness should be asked about the fact, without any reference made by the examiner of the witness to any prior statements made by others at trial. As such, Defendant moves that Plaintiff be precluded from commenting on or inquiring with one witness about the testimony of other witnesses.

### 5.     Equally available (or unavailable) evidence.

It is improper for a party to argue negative inferences due to the failure of a party to put on evidence when the evidence is equally available (or unavailable) to both parties. *See Wall v. Bascombe*, 2011 U.S. Dist. LEXIS 291 at *7-8 (W.D. Mo Jan. 4, 2011) and *Leehy v. Supreme Express & Transfer Co.,* 646 S.W.2d 786, 790-791 (Mo. Banc 1983) (It is improper for a party to argue the negative inference resulting from his opponent's failure to produce such a witness if the witness is equally available to both parties.) As such, Defendant moves that Plaintiff be precluded from mentioning or making reference to the failure to produce any documents or to call any witnesses equally available (or unavailable) to either side. In particular, Plaintiff should not be permitted to argue any adverse inferences as a result of the University's failure to call as

40

witnesses individuals who were LNU employees, who worked at the COIB, and who were not under the control of MSU, including Dean Dong, Phillip Whittkorn, Dan Shepherd, and Mike Coutts. Defendant further moves for an order that Plaintiff may not mention or state to the jury the probable testimony of a witness who is absent, unavailable, or not called to testify in this case.

Respectfully submitted,

TUETH KEENEY COOPER
MOHAN & JACKSTADT, P.C.

/s/ Ian P. Cooper
Ian P. Cooper  #32133
Mollie E. Hennessee #61647
34 N. Meramec, Suite 600
St. Louis, Missouri 63105
Telephone:  (314) 880-3600
Facsimile:   (314) 880-3601
Email:  icooper@tuethkeeney.com
Email: mhennessee@tuethkeeney.com

ATTORNEYS FOR THE BOARD OF GOVERNORS OF
MISSOURI STATE UNIVERSITY

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 29th day of September, 2014, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all counsel of record.  In addition, the foregoing was served by electronic mail upon the following:

Marvel Ma
2019 Weldon Blvd.
Ann Arbor, MI 48103
Email: marvelwork@gmail.com

/s/ Ian P. Cooper

41