UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | | |
|---|---|---|---|
| MARVEL MA | Plaintiff | ) | |
| | | ) | |
| | | ) | |
| *v.* | | ) | |
| | | ) | Case No. 11-3048-CV-S-RTD |
| | | ) | |
| BOARD OF GOVERNORS OF | Defendant | ) | |
| MISSOURI STATE UNIVERSITY | | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S REVISED MOTION *IN LIMINE***

COME S NOW Marvel Ma, Plaintiff, Pro Se, and hereby files his Response to

Defendant's Revised Motion *In limine*, and states as follows:

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................... 2

INTRODUCTION ........................................................................................................................ 4

ARGUMENT ................................................................................................................................ 5

CONCLUSION .......................................................................................................................... 29

1

# TABLE OF AUTHORITIES

| Cases: | Page: |
|---|---|
| *Achor v. Riverside Golf Club*, 117 F.3d 339, 340 (7th Cir. 1997)………………………… | 7 |
| *Bevan v. Honeywell, Inc*., 118 F.3d 603, 611 (8th Cir.1997)……………………………… | 8 |
| *Chaney v. Plainfield Healthcare Ctr*., 612 F.3d 908, 916 (7th Cir. 2010)………………… | 9 |
| *Costa v. Desert Palace, Inc*., 299 F.3d 838, 856–57 (9th Cir.2002)……………………… | 7 |
| *Davis v. Ricketts*, 2014 WL 4211355 (8th Cir. 2014)…………………………………… | 11 |
| *Edgington v. Fitzmaurice*, 29 Ch. Div. 459, 483 (1885)…………………………………... | 13 |
| *G. Heileman Brewing Co., Inc. v. NLRB*, 879 F.2d 1526, 1531 (7th Cir. 1989)…………... | 18 |
| *Gehring v. Case Corp*., 43 F.3d 340, 343-44 (7th Cir.1994)……………………………… | 7 |
| *Harvey v. Anheuser-Busch, Inc*., 38 F.3d 968, 972 (8th Cir.1994)……………………….. | 8 |
| *Hunziker v. Scheidemantle*, 543 F.2d 489, 495 n.10 (3d Cir. 1976)……………………….. | 25 |
| *In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 922 (8th Cir. 1997)……………. | 26 |
| *Knox v. Indiana*, 93 F.3d 1327, 1334 (7th Cir.1996)……………………………………… | 7 |
| *Knox v. Skanska USA Building, Inc*., 6th Cir Nos. 12-5967; 12-6236 (Dec 10, 2013)…….. | 18 |
| *Leehy v. Supreme Express & Transfer Co*., 646 S.W.2d 786, 790-791 (Mo. Banc 1983)…. | 28 |
| *Louzon v. Ford Motor Co*., No. 11-2356 (6th Cir. June 4, 2013)…………………………. | 4, 9 |
| *Lynn v. Deaconess Med. Ctr.-W. Campus*, 160 F.3d 484, 487 (8th Cir.1998)……………. | 8 |
| *MacDissi v. Valmont*, 856 F.2d 1058……………………………………………………….. | 8 |
| *McAlester v. United Air Lines, Inc*., 851 F.2d 1249, 1261 (10th Cir.1988)………………... | 8 |
| *McCormack v. Capital Elec. Constr. Co*., 35 S.W.3d 410, 416 (Mo. Ct. App. 2000)……... | 24 |
| *Meyer Intellectual Properties Ltd. v. Bodum, Inc*., No. 11-1329 (Fed. Cir. 2012)………… | 9 |
| *Mid-Am. Tablewares, Inc. v. Mogi Trading Co., Ltd*., 100 F.3d 1353 (7th Cir. 1996)……. | 9 |
| *Nichols v. American Nat'l Ins. Co*., 154 F.3d 875, 883-884……………………………….. | 27 |

Case 6:11-cv-03048-BP   Document 155   Filed 10/08/14   Page 2 of 31

*Ricks v. Riverwood Int'l Corp.*, 38 F.3d 1016, 1019 (8th Cir.1994)...........................  8

*Sanghvi v. City of Claremont*, 328 F.3d 532, 540 (9th Cir.2003)..............................  7

*Scott v. County of Ramsey*, 180 F.3d 913, 917-918 54 (8th Cir. 1999).......................  7

*Stone v. City of Columbia*, 885 S.W.2d 744, 746 (Mo. Ct. App. 1994)......................  27

*Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981)...................................................................................  *passim*

*United States v. Borrelli*, 621 F.2d 1092, 1095 (10th Cir.1980)..............................  25

*United States v. Farrington*, 499 F.3d 854, 859 (8th Cir. 2007).............................  6

*United States v. Fowler*, 932 F.2d 306 (4th Cir. 1991)......................................  25

*United States v. Muhlenbruch*, 634 F.3d 987, 1001 (8th Cir. 2011).........................  6

*United States v. Smith*, 550 F.2d 277, 281 (5th Cir.1977)....................................  25

*US Postal Service v. Aikens*, 460 U.S. 711, 715, 103 S.Ct. 1478, 1481-82, 75 L.Ed.2d 403 (1983).....................................................................................................  7, 13

*Williams v. Pharmacia, Inc*., 1998 WL 81258 (7th Cir.)....................................  23

*Yartzoff v. Thomas*, 809 F.2d 1371, 1375 (9th Cir.1987)....................................  7

**Rules:**                                                                        **Page:**

Fed. R. Evid. 403................................................................................................  *passim*

Fed. R. Evid. 408................................................................................................  26

Fed. R. Evid. 411................................................................................................  24

Fed. R. Evid. 701................................................................................................  25

Fed. R. Evid. 801(d)(2)(A)...........................................................................  6, 12

Fed. R. Evid. 803................................................................................................  12, 16

Case 6:11-cv-03048-BP   Document 155   Filed 10/08/14   Page 3 of 31

# **INTRODUCTION**

Defendant's tedious refrain has been that this case is *only* about Title VII discrimination, and nothing else, as reason to exclude Plaintiff's evidence. But it is not Plaintiff, but Defendant, who has tremendously widened the scope of this case. Defendant has refused to acknowledge that they terminated Plaintiff and that they are not joint employers of Plaintiff under Title 7, and now, they want Plaintiff to prove that MSU controlled LNU[1].

Defendant in its 41 page motion *in limine* asks the Court to grant its motion to exclude everything but the kitchen sink – the purpose of which is to re-litigate matters that have already been decided on summary judgment. A proper motion *in limine* is one that focuses on evidentiary issues – not factual or legal issues. Motion *in limines* should be used to exclude irrelevant evidence or "exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984). Defendant's 41 page motion *in limine* largely seeks to improperly exclude all evidence so Plaintiff will be unable to prove that MSU was Plaintiff's joint employer, and that he was terminated from illegal discrimination. The 6th Circuit has warned about "parties willing to invest the time and money in making motions *in limine* on cases that may never go to trial are repeat players like insurance companies and prosecutors or *deep pockets* willing to spend money on scorched earth tactics to *discourage impecunious plaintiffs*." *Louzon v. Ford Motor Co*., No. 11-2356 (6th Cir. June 4, 2013) quoting Wright & Graham, Federal Practice and Procedure § 5037.10 (2005).

Motions to exclude prejudicial evidence are reasonable; however, Defendant minimizes the standard to exclude prejudicial evidence. Federal Rules of Evidence allows evidence whose

---

[1] Defendant's proposed jury instructions require this as one element that Plaintiff needed to prove in order to prevail on his claim of discrimination.

4

probative value is *substantially* outweighed by its prejudicial value to be excluded. One factor courts consider is eve n if the evidence is prejudicial, whether the proponent can substitute the prejudicial evidence for other evidence that is not or is less prejudicial. In this case, the answer is no. For example, there is no other alleged misconduct that is comparably serious to Coutts' alleged sexual harassment that could be any less prejudicial. Furthermore, even if the jury finds that Coutts sexually harassed his students, and that he was disciplined less severely than Plaintiff, this does not imply that the jury found guilt from improper reasoning (finding guilt from MSU's less severely disciplining for a more egregious violation is proper).

Defendant's repetitive arguments that Plaintiff's evidence should be excluded because it is irrelevant, highly prejudicial, confusing the jury, and repetitive are simply smoke-screens to cover up another motive – to exclude evidence that undermines Robinette's credibility. Robinette's testimony has been so inconsistent that Defendant now prays that its hail mary chance of preserving any remaining shred of Robinette's credibility for the trial is to persuade this Court to grant Defendant's motion *in limine* to exclude Plaintiff's evidence.

For the reasons herein, nearly all of Defendant's requests to exclude evidence should be denied.

## ARGUMENT

Defendant unfortunately omits one key word in its discussion of the federal rules of evidence. Fed. R. Evid. 403 permits the Court to exclude evidence if its probative value is *substantially* outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Furthermore, courts should rarely grant motions *in limine* without first hearing and understanding how the evidence plays out in court.

5

Furthermore, simply because evidence, in singular or aggregate, tends to prove guilt does not mean that the evidence is unfairly prejudicial. Evidence that is prejudicial must tend to encourage the jury to find guilt from improper reasoning. See *United States v. Muhlenbruch*, 634 F.3d 987, 1001 (8th Cir. 2011) and *United States v. Farrington*, 499 F.3d 854, 859 (8th Cir. 2007).

Defendant laboriously argues that much of Plaintiff's evidence is irrelevant because it has nothing to do with Plaintiff's discrimination claim. However, Plaintiff needs to establish that both LNU and MSU were Plaintiff's joint employers by scrutinizing interrelation of operations, common management, centralized control of labor relations, and common ownership or financial control; and other factors such as supervision of the employees' day-to-day activities, authority to hire or fire employees, promulgation of work rules and conditions of employment, work assignments, and issuance of operating instructions. Evidence that addresses any of these factors is relevant and should not be excluded simply because the evidence is not probative of discrimination.

Evidence that serves to undermine a witness's credibility such as prior inconsistent statements or testimony is relevant and admissible for impeachment purposes. In many areas that Defendant is seeking to exclude Plaintiff's evidence, Robinette's testimony, statements, and emails substantially contradict themselves. As such, even if the Court may find some evidence not relevant to Plaintiff's employment status or discrimination, it is relevant for impeachment purposes.

To prevail on a discrimination claim, Plaintiff only needs to establish through a preponderance of the evidence that he was discharged by Defendant, and that Plaintiff was discharged because of his race or national origin. As such, Plaintiff is permitted to pursue various avenues, including showing the stated reason for termination lacks credence, shifting justifications, discriminatory remarks by decision makers, and disparate treatment.

The Supreme Court and various courts have emphasized that the elements that comprise a

"prima facie case" are only for the judge, not the jury. See *US Postal Service v. Aikens*, 460 U.S. 711, 715, 103 S.Ct. 1478, 1481-82, 75 L.Ed.2d 403 (1983); *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981); *Knox v. Indiana*, 93 F.3d 1327, 1334 (7th Cir.1996); *Gehring v. Case Corp*., 43 F.3d 340, 343-44 (7th Cir.1994). Once the judge concludes using the McDonnell Douglas burden shifting framework that the evidence could support a verdict for the plaintiff, and lets the case goes to a jury, the framework (including the similarly situated test) should not be part of any jury instructions. See *Achor v. Riverside Golf Club*, 117 F.3d 339, 340 (7th Cir. 1997); *Costa v. Desert Palace, Inc*., 299 F.3d 838, 856–57 (9th Cir.2002) (en banc); *Sanghvi v. City of Claremont*, 328 F.3d 532, 540 (9th Cir.2003); *Yartzoff v. Thomas*, 809 F.2d 1371, 1375 (9th Cir.1987). In fact, even the distinction between "direct" and "circumstantial" discrimination is often confusing to the jury, and thus, should not be included in any jury instruction. Instead, the ultimate question for the jury is to decide based on the preponderance of the evidence whether the defendant intentionally took the adverse actions because of the plaintiff's membership in a protected class, which would result in the ultimate finding of illegal discrimination. "The plaintiff retains the burden of persuasion. . . . [H]e may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. 248. Indeed, there may be cases where the plaintiff's initial evidence, combined with effective cross-examination of the defendant, will suffice to discredit the defendant's explanation. *Id*.

Defendant argues that the alleged misconduct of other employees is irrelevant because they were not the same misconduct that Plaintiff was accused of, or because other allegedly absent employees were not similarly situated. However, the Eighth Circuit has repeatedly emphasized that this strong showing of similarly situated employees is required when the *only* evidence of pretext or

7

discrimination is disparate treatment. See *Scott v. County of Ramsey*, 180 F.3d 913, 917-918 54 (8th Cir. 1999) quoting *Harvey v. Anheuser-Busch, Inc*., 38 F.3d 968, 972 (8th Cir.1994). However, when as here, the evidence of disparate treatment is offered as one component of circumstantial proof of pretext, the "*evidence does not need to reach the degree of certainty required of plaintiffs who present no proof of discrimination besides [disparate treatment].*" *Bevan v. Honeywell, Inc*., 118 F.3d 603, 611 (8th Cir.1997) (citing *MacDissi v. Valmont*, 856 F.2d at 1058).

   Various circuits, including the Eighth Circuit, have consistently warned of applying the "similarly situated" test too narrowly. To show other employees are similarly situated, plaintiffs are not restricted to finding employees with the same exact offense. Instead, other employees whose violations are of "comparable seriousness" are valid comparators. See *Lynn v. Deaconess Med. Ctr.-W. Campus*, 160 F.3d 484, 487 (8th Cir.1998); See *Ricks v. Riverwood Int'l Corp*., 38 F.3d 1016, 1019 (8th Cir.1994); see also *McAlester v. United Air Lines, Inc*., 851 F.2d 1249, 1261 (10th Cir.1988) (finding that even if other employees did not commit the exact same offense as the plaintiff does not prohibit consideration of their testimony as long as their acts were of comparable seriousness). Courts have held that "to require that employees always have to engage in the exact same offense as a prerequisite for finding them similarly situated would result in a scenario where evidence of favorable treatment of an employee who has committed a different but more serious, perhaps even criminal offense, could never be relevant to prove discrimination. Common sense as well as our case law dictate that we reject such an approach." *Lynn*, 160 F.3d 484 (finding that another employee whose alleged misconduct (sleeping on the job) was different than that of the plaintiff was a valid comparator). Various courts have allowed plaintiffs to support disparate treatment claims by introducing employees who had different violations than the plaintiff. In *Ridout*, 12-3220, the court decided two employees whose misconducts (one was accused of sleeping on the

job, and the other for crafting a mock Ku Klux Klan hood and displaying it to an African American employee) were different, but more serious than the plaintiff's misconduct (yelling and declining performance) were valid comparators. In *Chaney v. Plainfield Healthcare Ctr.*, 612 F.3d 908, 916 (7th Cir. 2010), the court found that although the misconduct of another employee (failing to respond to a bed alarm) was different, but more serious than the plaintiff's alleged misconduct (swearing in front of a patient), that employee was still a valid comparator. Courts have made it clear that evidence involving unequal discipline for different, but more serious misconduct is relevant.

Furthermore, many of Defendant's arguments are not proper content for a motion *in limine*, whose objective is to consider admissibility of evidence (irrelevancy, immateriality, unreliability, unduly prejudicial, lack of probative value, violation of the court's rules of evidence). After failing on summary judgment, Defendant now attempts to seek to exclude all of Plaintiff's evidence before the trial, but this strategy is wrong – it intrudes on the jury's role as fact-finder while denying Plaintiff the procedural protections of summary judgment. In another employment discrimination case, the court ruled that legal and factual challenges (e.g. whether an employee constitutes a proper comparator and is thus, "similarly situated") are not proper considerations in a motion *in limine*. See *Louzon*., No. 11-2356 (6th Cir. June 4, 2013). Likewise, sufficiency of evidence is the subject for summary judgment, not motions *in limine*. See *Meyer Intellectual Properties Ltd. v. Bodum, Inc*., No. 11-1329 (Fed. Cir. 2012). The Seventh Circuit similarly held that defendants should raise arguments over the admissibility of evidence directed to whether damages were reasonably certain as part of a summary judgment motion, not a motion *in limine*. See *Mid-Am. Tablewares, Inc. v. Mogi Trading Co., Ltd*., 100 F.3d 1353 (7th Cir. 1996) (finding that arguments regarding sufficiency of plaintiff's evidence are not proper considerations of motion *in limine* to exclude evidence prior to trial).

The Supreme Court stated that the "[jury] should consider *all* the evidence, giving it

9

whatever weight and credence it deserves." *US Postal Service,* 460 U.S. 711. Defendant's numerous

claims that various matters are irrelevant, unduly prejudicial, and/or inadmissible are meritless and

should be rejected.


**A.      Matters allegedly related to Plaintiff's discrimination claim.**

      **1.      Evidence of statements allegedly made by or correspondence sent by individuals employed by LNU who work/worked at the COIB**

Whether or not statements by COIB employees are admissible under 801(d)(2)(D) is a

decision that cannot be made at this time, and Plaintiff requests that the Court defer making any

decision until trial. If Plaintiff is able to establish that both MSU and LNU are joint employers of

individuals, including instructors and associate deans, employed at the COIB, then statements from

employees at the COIB made under their scope of authority or agency would be admissible as

opposing party's statements under Fed. R. Evid. 801(d)(2)(A). Plaintiff intends to introduce a

number of evidence, including LNU and MSU's contract regarding the COIB, MSU's internal audit

of the COIB, articles about the COIB, COIB faculty handbooks, emails from Robinette and other

MSU administrators, testimony from  former COIB instructors, and testimony from various MSU

and LNU employees that will not only show both LNU and MSU are joint employers under Title 7,

but in fact, MSU had significantly more control over COIB instructors and associate deans than LNU.

Furthermore, the Court has already found that Plaintiff has presented sufficient evidence at

summary judgment to show that on matters concerning the COIB, LNU and MSU had significant

interrelated operations, such that the jury may determine that both LNU and MSU were Plaintiff's

joint employers.  As such, if Plaintiff is able to establish that LNU and MSU are his joint employers,

then for all employees who worked under contracts similar to Plaintiff, their statements would be

Case 6:11-cv-03048-BP   Document 155   Filed 10/08/14   Page 10 of 31

admissible under 801(d)(2)(D) as well as statements by Dong and other employees at the COIB. See *Davis v. Ricketts*, 2014 WL 4211355 (8th Cir. 2014).

Since the jury will ultimately have to decide whether or not LNU and MSU are Plaintiff's joint employers, the Court can issue a jury instruction that instructs the jury to disregard certain individuals' statements if they feel that Plaintiff is unable to establish that both LNU and MSU are his joint employers. The admissibility of statements from COIB faculty and staff rests on factual and legal issues that need to be resolved at trial.

2.      **Evidence of alleged absences of other COIB instructors and subsequent treatment or discipline.**

Defendant seeks to exclude all evidence of alleged absences of other COIB instructors and subsequent treatment or discipline. Defendant's main argument is that comparator evidence is admissible only if Plaintiff can establish that the other instructors are similarly situated to him. But this argument is incorrect. The similarly situated test only applies to summary judgments and not to juries when the case goes to trial. The jury should be at liberty to grant whatever weight it wants to the evidence presented.

Plaintiff also intends to produce evidence (emails from Robinette and Shepherd, and Robinette's testimony) that show both Robinette and Shepherd were aware at least one other instructor (Freddie Jennings) was intentionally missing classes, and that Robinette and Shepherd took no action against this instructor (other than issue a warning). In fact, Plaintiff will also show that Robinette recommended renewing Jennings' contract for the following academic year. Finally, Plaintiff's discussions with various COIB administrators and supervisors, including Dong, Wittkorn,

11

and Shepherd, regarding other instructors' absences, and the school's lack of any disciplinarian action against any previous instructor for alleged absenteeism are not speculation, but relevant and admissible.

Producing evidence of other instructors' absences, the COIB's policy of handing instructors' absences, and the COIB's disciplinarian history of handling instructors who repeatedly missed classes are all relevant issues for the jury to decide whether Plaintiff was treated fairly, which leads to the ultimate question of discrimination. This evidence is relevant and would assist, not confuse, the jury in deciding the question of whether Plaintiff was terminated from discrimination.

### 3. Evidence of the salary or pay of COIB instructors other than Plaintiff and any alleged disparate pay among such instructors.

Defendant argues that any evidence of the salary or pay of COIB instructors other than Plaintiff and any alleged disparate pay among such instructors should be excluded.

Defendant argues that Plaintiff failed to preserve this argument for trial. First, Plaintiff preserved this argument regarding discriminatory pay with various references to issues concerning salary and pay (See Plaintiff's Second Amended Complaint, Doc. 42, p. 3 and Exhibit B to Defendant's Reply to Plaintiff's MSJ Response, p. 3). Second, Plaintiff did not have any concrete evidence until Defendant produced additional documents in May, 2014. Some of these documents (emails between MSU administrators, and COIB associate deans and instructors) referred to the disparate pay between native Chinese and foreign instructors. In other emails, Shepherd frequently complained about Plaintiff's salary.

Although Plaintiff did assert that he was not contractually paid unequally, Plaintiff did claim that Shepherd and MSU reduced his salary (and eliminated his housing allowance and other benefits) when both parties were already under contract. The evidence of discriminatory pay is relevant because it shows that MSU had a policy and history of discriminating against Chinese instructors, and that it goes to explaining Shepherd's state of mind when dealing with Plaintiff (see *Aikens*, 460 U.S. 711, stating that "the law often obliges finders of fact to inquire into a person's state of mind" and "the state of a man's mind is as much a fact as the state of his digestion. It is true that it is very difficult to prove what the state of a man's mind at a particular time is, but if it can be ascertained it is as much a fact as anything else." quoting *Edgington v. Fitzmaurice*, 29 Ch. Div. 459, 483 (1885)). MSU's discriminatory policy toward Chinese instructors and Shepherd's unjustified complaints about Plaintiff's compensation taken together may permit the jury to infer that Shepherd's motive was to reduce Plaintiff's compensation to that of native Chinese instructors. Plaintiff should be permitted to introduce this evidence so that the jury can draw inferences regarding Shepherd's motive behind reducing Plaintiff's salary and eliminating his other benefits.

Finally, evidence regarding other instructor's salary (including inequitable pay) is relevant because this evidence can establish that MSU was a joint employer of the COIB instructors under Title 7. Any evidence showing MSU made decisions or recommendations regarding instructor's salaries and contract is relevant. Since Defendant has asserted that LNU makes all decisions regarding COIB instructors, Defendant's claim that any evidence of disparate pay would be highly prejudicial makes no sense since it is MSU, and not LNU, who is at trial. Any remaining prejudicial value could then be minimized by an appropriate jury instruction.

**4.     Evidence of alleged stray remarks of Dan Shepherd.**

13

Shepherd's racist and discriminatory comments about Plaintiff and other Chinese COIB employees are highly probative of Shepherd's discriminatory motives and intent underlying the adverse action that he initiated against Plaintiff. Furthermore, comments and statements by Shepherd as associate dean of the COIB, and Plaintiff's supervisor, are admissible. Some of these comments were made near Plaintiff's termination, suggesting discriminatory animus and bias against Chinese people, including Plaintiff. Shepherd's discriminatory comments against Plaintiff, and other Chinese faculty and staff, and criticisms of China, its laws, and legal system are all relevant and their probative value outweighs any prejudicial value.

**5.      Evidence of any alleged misconduct of Dan Shepherd unrelated to Plaintiff's termination or employment, including evidence relating to any alleged relationship between Shepherd and a student, evidence relating to Shepherd's relationship with other COIB instructors and staff, and evidence relating to Shepherd's resignation as Associate Dean of the COIB.**

Defendant attempts to exclude testimony or evidence regarding Shepherd's confrontation with Kong, after which Plaintiff heard Shepherd's discriminatory comments. However, the facts surrounding the confrontation are relevant because it allows the jury to consider the context of Shepherd's remarks. To separate those remarks from the context in which he mentioned it (Shepherd's failure to follow rules and obey Kong who was his immediate supervisor at the time of the confrontation) is impossible. Furthermore, these remarks are relevant because they are evidence of Shepherd's racial prejudice against other Chinese instructors.

14

Defendant also seeks to exclude any evidence surrounding Shepherd's resignation. Shepherd's resignation is relevant because it allows the jury to infer the real reason for Shepherd's resignation, such as whether Shepherd's resignation had anything to deal with his discrimination and termination of Plaintiff. Furthermore, Defendant attempts to exclude this evidence because Robinette failed to testify truthfully about the reason for Shepherd's resignation. In contrary to Robinette's testimony that Shepherd was forced to resign because of his relationship with the student, Plaintiff will produce evidence that it was not the case (audio recording of a conversation between Plaintiff and Shepherd at the beginning of the Fall, 2009 semester). The evidence surrounding Shepherd's resignation is important to impeaching Robinette's credibility.

All of Shepherd's alleged misconduct, including his relationship with his student, class absences, and insubordination, are comparably serious to Plaintiff's alleged misconduct of repeated class absences. It should be left to the jury to consider Robinette and MSU's treatment of Shepherd's alleged misconduct against Plaintiff's termination for alleged class absences. Although Robinette was Shepherd's immediate supervisor (when Shepherd was associate dean), and Shepherd was Plaintiff's immediate supervisor, Robinette was nevertheless the ultimate supervisor of both Shepherd and Plaintiff, and the jury should be permitted to make any inferences about Robinette's state of mind from his decision to terminate Plaintiff for alleged absences, but not Shepherd for dating a student (which Robinette testified was a terminable offense[2]).

Defendant has argued that Plaintiff's replacement was another Asian instructor (Cheong) and that Shepherd only terminated Plaintiff, but not Cheong. As a result, Shepherd's relationship with his student is relevant because it can establish the reason why Shepherd could have had a slight bias for Cheong was because they both were dating their students, who were both classmates.

Defendant has argued that Shepherd's agreeing to renew Plaintiff's contract undermines

---

[2] Plaintiff's Response to Defendant's Motion for Summary Judgment, Ex. 7, p. 79.

Case 6:11-cv-03048-BP   Document 155   Filed 10/08/14   Page 15 of 31

Plaintiff's claims of discrimination. Plaintiff should be then allowed to present any evidence underlying Shepherd's motivation to renew Plaintiff's contract. One plausible reason is that Shepherd might have been afraid of being terminated if Plaintiff had complained to Robinette, Dong, or MSU about Shepherd's improper behavior.

Furthermore, any evidence of MSU's involvement in the handling of Shepherd in response to his alleged misconduct is probative of MSU's joint employer status (supervision and discipline).

Finally, Defendant argues that any probative value would be severely outweighed by any prejudicial value. However, since MSU has asserted that all faculty, including associate deans, were under LNU, and that MSU had no control or authority over them, there would be little reason why the jury should hold MSU accountable for LNU's decisions regarding Shepherd since it is MSU, and not LNU, who is the defendant. Any remaining prejudicial value could then be minimized by an appropriate jury instruction.

6. **Evidence of any alleged misconduct of Mike Coutts, including evidence relating to any alleged claims of sexual harassment or any alleged relationship between Coutts and a student.**

Defendant seeks to exclude all evidence regarding Coutts's alleged misconduct. First, Coutts' misconduct involving his relationship with a student and sexual harassment of a student are indisputably worse violations than Plaintiff's alleged misconduct. Second, Coutts' misconduct occurred under Associate Dean Shepherd. Coutts' violations are comparably serious, and as such, Coutts' misconduct is relevant to proving disparate treatment.

Furthermore, Defendant is seeking to exclude any evidence of Coutts misconduct because

Robinette failed to testify truthfully. Robinette testified that he knew nothing of Coutts misconduct involving a student and that he had no involvement with Coutts over this alleged misconduct. However, Robinette's own emails contradict his sworn testimony. This evidence is thus relevant to undermining Robinette's credibility, and is relevant for impeachment purposes.

Defendant also argues that Coutts' comments to Plaintiff (blackmailing another instructor and sexually harassing another student, and threating to report Plaintiff to the Chinese authorities) were made after Plaintiff's termination and are thus irrelevant. This evidence is relevant because a reasonable jury could find that these new allegations could constitute Defendant's shifting explanations, which would show pretext. Furthermore, Plaintiff intends to introduce Coutts' threats as proximate causes of Plaintiff's emotional distress.

Furthermore, any evidence of MSU's involvement in the handling of Coutts in response to his alleged misconduct is probative of MSU's joint employer status (supervision and discipline).

Finally, Defendant argues that any probative value would be severely outweighed by any prejudicial value. However, since MSU has already asserted that all faculty, including Coutts, were under LNU, and that MSU had no control or authority over LNU's decision to discipline Coutts, there would be little, if any reason that the jury would hold MSU accountable for LNU's decisions regarding Coutts since it is MSU, and not LNU, who is the defendant. Any remaining prejudicial value could then be minimized by an appropriate jury instruction.

7.     **Evidence of any alleged misconduct of other LNU employees who worked as COIB instructors unrelated to missing classes or absenteeism.**

Other alleged misconduct of other COIB instructors is relevant in proving disparate treatment.

17

Similar to Coutts and Shepherd's alleged misconduct, Gard's misconduct of holding classes while he was under the influence of alcohol and Jennings' alleged misconduct of violating the boundary between instructors and students are undisputely more serious than Plaintiff's alleged misconduct. Plaintiff intends to introduce evidence, other than his own testimony, of Jennings' and Gard's misconduct and MSU's responses. As such, this comparison evidence is relevant, and the jury should be allowed to consider all comparator evidence. Furthermore, any evidence of MSU's involvement in the handling of Gard and Jennings in response to their alleged misconduct is probative of MSU's joint employer status (supervision and discipline).

8. **Evidence regarding the termination or non-renewal of other COIB instructors who are not Chinese.**

Defendant asserts that Plaintiff and other faculty members are not employees of MSU. In order to show an entity is an employer under Title 7, the jury should be allowed to consider all evidence of control over the employee. See *Knox v. Skanska USA Building, Inc*., 6th Cir Nos. 12-5967; 12-6236 (Dec 10, 2013); *G. Heileman Brewing Co., Inc. v. NLRB*, 879 F.2d 1526, 1531 (7th Cir. 1989). One of these factors is hiring and firing. To prevent Plaintiff from introducing evidence of MSU's hiring and termination of instructors, regardless of whether they are Chinese or not, would be highly prejudicial. In the least, Plaintiff should be able to use such evidence for impeachment purposes (Robinette testified that he had no involvement in any of the termination or non-renewal of COIB instructors' contracts, even though numerous emails sent by Robinette show otherwise.)

9. **Evidence regarding any complaints from current or former students or**

18

**instructors regarding the COIB, LNU, or MSU that are unrelated to Plaintiff's claim that he was terminated due to his Chinese race or national origin.**

Two factors that that are considered in deciding whether an entity is an employer under Title 7 are discipline and supervision. Complaints from other instructors, but more importantly, how they were handled by MSU, are probative of MSU's supervision and disciplining of these instructors. For example, if a student was performing poorly academically, any evidence that shows how MSU handled the situation (such as by directing an instructor how to handle the student) is evidence of MSU's control over the instructor. Many of these students and instructors' complaints are intrinsically linked, and there is no way for the Court to decide unless the details surrounding the complaint are first presented. Instructors' complaints in and of themselves are not relevant to the lawsuit; however, MSU's response, supervision, and discipline are relevant to proving MSU is a joint employer, and in many scenarios, it would be impossible to explain the context without referring to the instructors' (or students') complaints.

**10. Evidence of Plaintiff's performance as an instructor at the COIB unrelated to missing classes or absenteeism.**

Defendant has claimed in their motion for summary judgment that Plaintiff did not meet MSU's legitimate expectations. Robinette has stated that students wanted to have Plaintiff replaced. Robinette's and Shepherd's emails also alleged many other problems with Plaintiff's performance and responsibilities as an instructor.

Evidence of Plaintiff's performance as an instructor can establish that he was a competent

19

instructor who had no significant problems until Shepherd became associate dean. After three years, of working at the COIB, and never previously accused of being absent from either former supervisors or students, Plaintiff's was first accused of such misconduct under Shepherd. Plaintiff's previous teaching performance could show that Robinette, whether or not he knew Shepherd's information regarding Plaintiff's absences was inaccurate, failed to exercise any reasonable judgment over his handling of Plaintiff's termination (e.g. whether he had sought any other independent information of Plaintiff's alleged absences).

Associate Dean Wittkorn's personal note to Plaintiff is admissible and offers evidence of Plaintiff's performance as an instructor and commitment to teaching. If Plaintiff had problems with his attendance or teaching performance before, Wittkorn's personal note and email asking Plaintiff to renew his teaching contract are evidence that was not the case. The student evaluations are relevant because they reflect Plaintiff's classroom performance, and specifically, his absence or attendance record (e.g. whether Plaintiff started class on time)[3]. These evaluations are admissible as public records under Fed. R. of Evid.803 (8), business records under Fed. R. of Evid. 803(6), exceptions to the hearsay rule under Fed. R. of Evid. 803(1) and 803(3), and/or Fed. R. of Evid. 807. See Plaintiff's Response to Defendant's Motion to Strike (DOC 117), pp. 15 - 17. If the Court finds that these evaluations are currently inadmissible, Plaintiff believes he can lay a proper foundation for their admissibility during the trial.

The student petition and emails from various students are admissible under Fed. R. of Evid. 807. Defendant's pleadings are laced with assertions that Robinette had good faith in believing Plaintiff was absent based on Shepherd's statements. Robinette repeatedly stated that not only was Plaintiff absent, but students wanted him replaced. The petition, which was signed by over two-thirds

---

[3] The first three questions of the student evaluations deal specifically with instructor's attendance and promptness and use of class time. See Plaintiff's Response to Defendant's Motion to Strike, Ex. I.

of Plaintiff's students, contradicts Robinette's allegations. The student emails came from uniquely

identifiable MSU students[4], and can also be admissible under Fed. R. of Evid. 807.

**11.      Evidence of MSU's internal audit of the COIB and any other articles,**

**publications, evidence or testimony detailing operational concerns or problems**

**with the COIB.**

The internal audit offers evidence of the interrelations between LNU and MSU, and MSU's

control over the COIB. For example, the internal audit states that the "MSU China Programs budget

and accounting analyst will work with the Dalian business manager to ensure that staff and faculty

salaries agree to contracts" and shows that MSU paid for the travel of associate deans. The findings

in the internal audit also contradict many of defendant's facts, such as not having a bank account in

China, not having access to any of the funds in the account, not paying any COIB instructors, etc.

None of the concerns associated with the COIB identified in the internal audit, such as timely budget

approval and the allocation of program expenses, are grave enough to significantly outweigh the

probative value of such evidence.

As for any articles, Plaintiff asks that the Court make a ruling on a case-by-case basis.

**12.      Audio Recordings**

Defendant makes overly broad, mantra-like objections to all audio recordings. The

admissibility of the audio recordings should be decided on a case by case basis. For the audio

recordings that Plaintiff intends to admit, Plaintiff is confident that they can be authenticated, are not

---

[4] Only MSU students have the live.missouristate.edu email addresses.

Case 6:11-cv-03048-BP   Document 155   Filed 10/08/14   Page 21 of 31

hearsay, and offer significant probative value, and a proper foundation can be laid. Plaintiff respectfully asks that the Court made a case-by-case determination as to the admissibility of each audio recording that the Plaintiff intends to submit as evidence.

**B.    Matters related to Plaintiff's damages claims**.

      **1.    Evidence of claims for back pay and housing allowances.**

Plaintiff is surprised by Defendant's argument regarding the computation of back pay and Plaintiff's failure to abide by Fed. R. of Evid. 26(a)(1)(A)(iii). Discovery has been over and Defendant had plenty of opportunities to communicate with Plaintiff regarding any issue of back pay. Defendant did not raise any objection until now. Long before Plaintiff's former lawyer withdrew, he communicated with Plaintiff on the method of computing back pay, and did not mention that Defendant had any objection to the computation of back pay. Furthermore, any failure to abide is harmless. Defendant can easily infer that Plaintiff simply took his contract pay (the pay of his last contract) and multiplied by the number of years minus any wages earned during that period.

Plaintiff has stated that based on his numerous conversations with former MSU supervisors, such as Zhang and Wittkorn, that he had a reasonable expectation of his contract being renewed. In fact, when Plaintiff was recruited by Zhang, Zhang mentioned that he was willing to offer Plaintiff a multi-year contract, but since the work permit needed to be renewed annually, that it would be better to have an annual contract. Furthermore, the issue of whether there was a reasonable expectation that Plaintiff could renew his contract annually should be an issue decided by the jury.

2.      **Evidence, inquiry, or comment regarding claims for prejudgment interest on an award of back pay and/or compensation to off-set any alleged adverse tax consequences due to a lump sum payment of back pay.**

Plaintiff has no objection regarding Defendant's motion to exclude evidence regarding prejudgment interest and compensation to off-set any alleged adverse tax consequences due to a lump sum payment of back pay. However, the issue of whether or not Plaintiff is should be awarded prejudgment interest is not a proper argument in a motion *in limine*, and thus, should be decided later.

3.      **Evidence of claims for front pay.**

Plaintiff has no objection regarding Defendant's motion to exclude evidence regarding front pay. However, the issue of whether or not Plaintiff is should be awarded front pay is not a proper argument in a motion *in limine*. Furthermore, Plaintiff does seek to be reinstated, but if the Court finds that Plaintiff cannot be reinstated, the Court has the option to award front pay in lieu of reinstatement as equitable relief allowed under Title 7. See *Williams v. Pharmacia, Inc*., 1998 WL 81258 (7th Cir.).

4.      **Evidence regarding punitive damages.**

Plaintiff does not seek to recover punitive damages against Defendant.

5.      **Evidence of Plaintiff's attorneys' fees and court costs incurred as part of the**

**litigation he pursued against LNU in China.**

Title 7 grants courts broad discretion in awarding compensatory damages for past pecuniary expenses (e.g. moving expenses, job search expenses, medical expenses, psychiatric expenses, physical therapy expenses, and *other quantifiable out-of-pocket expenses*) and future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses. If Plaintiff can establish that it was MSU's decision to terminate Plaintiff and that decision was motivated by illegal discrimination, Plaintiff should be able to recover his expenses from pursuing legal action to recover the pay that was wrongfully withheld, which he had to do in China. As a result, Plaintiff should be permitted to introduce evidence of all costs and fees that he incurred, but were not compensated for by the Chinese court, against Defendant, such as attorneys' fees and other expenses.

**6.      Evidence of Plaintiff's financial condition.**

*McCormack v. Capital Elec. Constr. Co.*, 35 S.W.3d 410, 416 (Mo. Ct. App. 2000) is not binding on this court, and any evidence of Plaintiff's poor current financial condition which was proximately caused by Defendant's discrimination is admissible to prove damages.

**7.      Evidence regarding the University's insurance coverage.**

Fed. R. Evid. 411 prohibits using evidence of liability insurance, or the lack of, to prove whether the person acted negligently or otherwise wrongfully. Plaintiff will not do that. However, the

evidence of the existence of liability insurance can be admitted for other purposes, such as proving

agency, ownership or control. See *Hunziker v. Scheidemantle*, 543 F.2d 489, 495 n.10 (3d Cir. 1976).

**C.      Miscellaneous**

    **1.      Conclusory statements and speculation, inquiry, or comment about the intent or**

          **state of mind of others.**

      Under Fed. R. of Evid. 701, witnesses are allowed to provide opinion testimony if they are

based on the witnesses' perception, and serves to help understand the witness's testimony or to

determine a fact in issue. See *United States v. Fowler*, 932 F.2d 306 (4th Cir. 1991); *United States v.

Smith*, 550 F.2d 277, 281 (5th Cir.1977); *United States v. Borrelli*, 621 F.2d 1092, 1095 (10th

Cir.1980); *United States v. Murray,* 523 F.2d 489 (8th Cir. 1975).   For example, Plaintiff should

be permitted to state that it was his opinion that Shepherd deliberately excluded him from some

emails since it was based on his Plaintiff's perception, and that this can explain how Shepherd was

trying to conceal his discrimination animus by making it more difficult for Plaintiff to meet with

Robinette.

      If Plaintiff is permitted to present his testimony in the form of a statement, Plaintiff is

opposed to providing Defendant with an outline of the topics. This will provide Defendant with an

unfair advantage of knowing what Plaintiff will testify to, and give Plaintiff with little flexibility to

adjust his testimony during trial. For example, Defendant has stated that it will produce Dong and

possibly Coutts as witnesses. Since they both live and work in China, Defendant did not have the

opportunity to depose them, and as such, he might have to adjust his testimony to rebut their

testimony.

### 2.    Inquiry or comment regarding attorney-client matters.

Plaintiff does not object to Defendant's argument, but only regarding communications between University counsel and only MSU employees. This privilege should not however extend to communications between University counsel and LNU employees. MSU has clearly taken the position that LNU and MSU are separate entities and that the employees and any disputes are handled separately (LNU employees are managed and handled by LNU and MSU employees are managed and handled by MSU). Given this position, Defendant cannot assert privilege over its communications with LNU employees as third parties unless Defendant shows that MSU's general counsel assisted or represented LNU (which they cannot since Robinette has testified that MSU had no involvement in the legal proceedings[5]), or show that LNU had retained its own attorney before the communications (since common interest privilege can only be invoked after both clients have raised attorney-client privilege with their own respective attorney) and both attorneys was part of the privileged communications. See *In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 922 (8th Cir. 1997) (finding that the attorney-client privilege must be separately attached to each party before the court can find common-interest privilege between two parties).

### 3.    Evidence of settlement offers and responses and discussions related thereto.

Fed. Rule of Evid. 408 precludes any evidence surrounding compromise and offers to compromise that stemmed from *this* litigation. This rule does not apply to settlement discussions that

---

[5] See Plaintiff's Response to Defendant's Motion for Summary Judgment, Ex. 7, p. 75.

arose from a separate and entirely distinct litigation and a lawsuit to which MSU by its own admission was not even a party. However, even if Defendant can show that MSU was involved in the legal proceedings, evidence of conduct and statements (unqualified factual assertions) made in compromise negotiations is admissible in subsequent litigation between the two parties.

**4.      Inquiry or comment about the testimony of other witnesses.**

Defendant fails to provide any case law to support their contention that any witness should be asked about a fact without any reference made by the examiner of the witness to any prior statements made by others at trial. The court in *Nichols v. American Nat'l Ins. Co*., 154 F.3d 875, 883-884 stated that it was improper for *expert* witnesses to offer an opinion on the truthfulness of witness testimony because such testimony fell outside the scope of testimony of expert witnesses under Rule 702. In the other case Defendant cites, *Stone v. City of Columbia*, 885 S.W.2d 744, 746 (Mo. Ct. App. 1994), which has no binding authority on this Court, also dealt with expert witnesses. Surprisingly, the court in that case also found that one question, even though it referred to another witness by name and asked for an opinion on the same facts on which this witnessed had relied, was indeed proper. Courts have only found that any testimony providing an opinion on whether a witness is truthful is improper; however, witness are allowed to provide an opinion on any facts that are made by other witnesses.

**5.      Equally available (or unavailable) evidence**

It would only be improper for the Plaintiff to argue any negative inference resulting from

27

MSU's failure to produce any of the key witnesses (e.g. Shepherd, Dong, Coutts) only if these witnesses are equally available to both parties. The Eighth Circuit identified three factors that should be considered to determine whether or not witnesses are equally available to both parties and none of these factors are met. See *Leehy v. Supreme Express & Transfer Co.*, 646 S.W.2d 786, 790-791 (Mo. Banc 1983). MSU as a joint employer of all these witnesses maintains some control or influence over these witnesses, and could easily have them testify. On the other hand, with most of these witnesses currently in China[6], Plaintiff has no means to procure their deposition or their presence for trial.

While Plaintiff has been unable to locate Shepherd, Robinette testified that he was still in communication with Shepherd after Shepherd had long resigned from the COIB[7]. Robinette also stated that he had no problem providing Shepherd with a recommendation[8]. Shepherd's emails also indicated that even after his resignation at the COIB that he was still in good terms with Robinette. There is little doubt given Shepherd's close and ongoing relationship with Robinette, his discriminatory comments against Plaintiff and other Chinese people, and his personal interest in seeing that Plaintiff does not prevail in his lawsuit since he was behind Plaintiff's termination, Shepherd's testimony would unquestionably be heavily biased in favor of Defendant. Information from MSU's website shows Coutts and Dong are still employed at the COIB, and as such, Coutts remains under Robinette and MSU's supervision, and would be much more likely to testify in favor of MSU than Plaintiff.

These facts show that MSU possesses a superior means of knowledge of the existence of these witnesses. Second, all of these witnesses, as former or current employees of the COIB, and who were involved in Plaintiff's termination, would obviously provide testimony in favor of MSU given

---

[6] Defendant in its response to discovery disclosures indicated both Coutts and Dong were located in China.
[7] Robinette testified during his deposition, which was on Aug. 1, 2013, that he had last communicated with Shepherd two months ago. See Plaintiff's Response to Defendant's Motion for Summary Judgment, Ex. 7, p. 40.
[8] Plaintiff's Response to Defendant's Motion for Summary Judgment, Ex. 7, p. 79.

their prior statements and past or current relationships with Robinette and MSU. Finally, these witnesses could naturally be expected to testify in favor of MSU since an unfavorable outcome for MSU could paint MSU negatively and damage the witnesses' relationships with MSU and/or LNU. It is equally reasonable to assume that current faculty and staff at the COIB are un likely to testify against their employers. As such, Plaintiff should be permitted to argue any negative inference resulting from MSU's failure to produce any of the key witnesses, especially Shepherd, Coutts, and Dong.

## CONCLUSION

Many of Defendant's arguments are not proper content in its motion *in limine.* Factual and legal issues have already been decided in summary judgment, and should not be reintroduced in motions *in limines,* which should address only evidentiary issues, such as unfair prejudice or lack of relevance. Defendant's attempt to recast a summary judgment motion, which this Court has denied, into a motion *in limine*, should be rejected as various courts have found such tactic to be highly improper as it undermines the role of the jury (credibility determinations, weighing of evidence, and drawing of legitimate inference).

Defendant relies heavily on the "similarly situated" standard to explain why certain evidence of alleged misconduct is not relevant. However, disparate treatment is only one part of Plaintiff's case, which is different from other cases that have relied only on the "similarly situated" test to prove disparate treatment. Here, because the COIB had never terminated an instructor's contract for absenteeism, Plaintiff should be able to explore MSU's and Robinette's decision to suddenly terminate Plaintiff for absenteeism when there were many previous

29

instances of instructors not attending classes as expected, and MSU never had any type of system in place to monitor and track instructors' absences. The jury should be able to draw any reasonable inferences about the fairness of Robinette's decision to allow or permit Shepherd to terminate Plaintiff.

Fed. R. Evid. 403 permits courts to exclude evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Defendant has not in any case shown how any of Plaintiff's possible evidence is significantly more prejudicial than probative. For those areas where the evidence *could* be prejudicial, Plaintiff asks that the Court to provide an appropriate jury instruction.

Furthermore, courts should rarely grant motions *in limine* without first hearing and understanding how the evidence plays out in court. Except for a few areas, such as punitive damages and front pay, Plaintiff respectfully asks the Court the deny most of Defendant's motion *in limine*, or to decide at trial.

Respectfully submitted,

/s/ *Marvel Ma*

Marvel Ma

Pro se

2019 Weldon Blvd.

Ann Arbor, MI 48103

TEL 419-340-7909

EMAIL marvelwork@gmail.com

**<u>Certificate of Service</u>**

The undersigned hereby certifies that on this 8th day of October, 2014, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all counsel of record. In addition, the foregoing was served by electronic mail upon the following:

- Ian Paul Cooper (icooper@tuethkeeney.com)

- Mollie Hennessee (mhennessee@tuethkeeney.com)

- Ryan DeBoef (ryandeboef@missouristate.edu)

Dated 10-08-2014

*/s/ Marvel Ma*
_____

Pro se
