UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

MARVEL MA      Plaintiff     )
 )
 )
v.     )
 )
 )    Case No. 11-3048-CV-S-RTD
 )
BOARD OF GOVERNORS OF      Defendant    )
MISSOURI STATE UNIVERSITY     )
 )

---

## PLAINTIFF'S SUGGESTIONS IN OPPOSITION TO
## DEFENDANT'S SECOND REVISED MOTION *IN LIMINE*

---

COMES NOW Marvel Ma, Plaintiff, through counsel, and for his Suggestions in Opposition to Defendant's Second Revised Motion *In Limine*, and states as follows:

### <u>INTRODUCTION</u>

This concerns Defendant's third version of its Motion *in Limine*. The first was filed on September 2, 2014, and was taken up during the pretrial conference on October 10, 2014. Doc. 124 and 157. Shortly prior to that conference, on September 29, 2014, Defendant filed its Revised Motion *in Limine*, which Plaintiff opposed in his Response. Doc. 135, 136 and 155. This third version covers largely the same ground as the previous versions, again seeking to choke off Plaintiff's case by asking the Court to exclude even clearly relevant evidence.

Because so much of Defendant's Motion is repetitive of its previous versions, Plaintiff incorporates his October 8, 2014 Response to Defendant's Revised Motion *in Limine* as if fully

set out herein. *See* Doc. 155. Plaintiff will focus in these suggestions primarily on new arguments made in Plaintiff's Motion, but does not abandon any previously made arguments on the admissibility of Plaintiff's evidence.  These suggestions cover about 13 of defendant's 27 motions in limine.  Plaintiff will supplement his suggestions in opposition to address the remaining motions in limine filed by Defendant.

A continually recurring issue in the Motion and, hence, in these Suggestions, is Defendant's insistence that it was not an employer of Plaintiff or of others whose statements Plaintiff intends to offer as admissions of Defendant. If Plaintiff were to fully address that issue each time it comes up here, it would unnecessarily lengthen these Suggestions. The Court has already ruled that a reasonable jury could find that Defendant was Plaintiff's employer based on Plaintiff's Statement of Additional Disputed and Undisputed Material Facts in his Response to Defendant's Motion for Summary Judgment. Doc. 128 at p. 7. Defendant has attempted to resurrect its argument to the contrary in an untimely request for summary judgment styled as a "Special Trial Brief," filed August 3, 2015. Plaintiff is responding in detail to that request in a separate Trial Brief. *See* Doc. 187. Rather than repeatedly summarize it here, whenever the issue arises Plaintiff will refer the Court to his more detailed treatment of the issue in his Trial Brief.

## ARGUMENT

**A.      Matters related to Plaintiff's discrimination claim**

### 1.      Evidence of Dan Shepherd discriminatory comments is admissible

Defendant asks the Court to exclude evidence of discriminatory comments made by Dan Shepherd on three grounds. None of them justifies exclusion. Contrary to Defendant's arguments, Defendant was Plaintiff's joint employer, so that the comments are admissions of a

party opponent and not inadmissible hearsay. The comments are of great probative value, well outweighing any prejudicial impact.

### a. Defendant was Plaintiff's joint employer

The Court found in its September 3, 2014 Order denying Defendant's Motion for Summary Judgment that a reasonable jury could find that Defendant was Plaintiff's joint employer. Doc. 128 at p. 7. Three days ago, Defendant filed what is in substance another motion for summary judgment, under the guise of a "Special Brief," claiming that the Court should reverse itself and grant summary judgment. *See* Doc. 178. Defendant's argument in part 1.A of its Motion is based on the same premise. Since Plaintiff argues this issue separately in his Trial Brief, Plaintiff refers the Court to that more detailed treatment. *See* Doc. 187.

### b. Shepherd's comments are probative of a discriminatory motive in Plaintiff's termination

Defendant argues in its Motion that "Plaintiff does not claim that Shepherd made the alleged comments in the context of his termination." Doc. 174 at p. 11. In fact, Plaintiff did allege that the comments were made "in the context of his termination":

> 15.      **Prior to and after termination, Shepherd had discriminated against plaintiff with respect to various terms, conditions and privileges of plaintiff's employment, including but not limited to** a imposing a heavier teaching schedule, scheduling plaintiff's classes on days not previously agreed upon, refusing to provide plaintiff with a teaching assistant(s), **making racial insults to plaintiff and other Chinese employees**, omitting plaintiff from important email communications, spreading false rumors about plaintiff, threatening plaintiff's employment, withholding plaintiff's wages and compensation, **making derogatory comments about China and the Chinese people**, and promoting Caucasians over more qualified Chinese/Asian employees or applicants. **Coutts and Robinette ratified and supported Shepherd's conduct toward plaintiff based on Shepherd's false information about plaintiff**.

Plaintiff's Second Amended Complaint, ¶ 15 (emphasis added). Doc. 42.

Plaintiff further alleged Shepherd's involvement in his termination in Paragraph 11 of his Second Amended Complaint. Doc. 42 at ¶ 11.

Defendant relies on *Twymon v. Wells Fargo & Co.,* 462 F.3d 925, 934 (8th Cir. 2006) for the proposition that even if Shepherd was involved in the decision making process that led to Plaintiff's termination, his comments were nevertheless "stray remarks" because they were themselves unrelated to the "decisional process" of Plaintiff's termination. Doc. 175, p. 12. *Twymon* is distinguishable on multiple grounds, and the comments are admissible to show discriminatory animus in the termination. The comments are also admissible because termination was not the sole relevant decisional process; the comments are relevant to show discriminatory animus in the decisional processes of other adverse employment actions as well.

First, *Twymon* is distinguishable on multiple grounds. For one thing, some of Shepherd's comments were made, in Plaintiff's presence, *during Shepherd's first attempt to terminate Plaintiff* on August 31, 2009. *See* Doc. 103, Exhibit 3, Affidavit of Marvel Ma, at ¶ 32. Those comments included "All you fucking Chinese people are causing me trouble" and "All you fucking Chinese people are driving me crazy." *Id.* It was during that meeting that Shepherd purported to exercise a clause in Plaintiff's contract to verbally terminate him. *Id.* In a subsequent phone call, Shepherd "reiterate[ed] some of the discriminatory remarks that he had previously made." *Id.* Another comment was made only a few days prior to that meeting, in which Shepherd asked "Why do I always get so much trouble from you fucking people?" *Id.* at ¶ 31.

Shepherd's remarks were made on multiple occasions within a span of months, as Shepherd's and Plaintiff's tenure at the school overlapped only for two semesters. *See id.* at ¶ 29 (Shepherd first hired as instructor in Fall 2008 semester). Some were made around the time of

Plaintiff's termination. It is reasonable to infer that Shepherd's discriminatory animus persisted throughout his participation in the dispute over Plaintiff's termination, and thus throughout the decisional process of the termination.

The comments excluded in *Twymon* were of an entirely different character from those in this case, and the *Twymon* comments plainly had no connection with the decision to terminate. The court found that the *Twymon* comments, "while racially offensive and misguided, were apparently made in the context of attempting to preserve and promote Twymon's career at Wells Fargo, not in relation to deciding to terminate Twymon." *Twymon* at 934. According to the court, Twymon's supervisor advised her to "develop a deferential persona, as 'a good black' that 'would be accepted by the Caucasians at Wells Fargo.'" *Id*. at 931. By contrast, Shepherd's comments display a vulgar and hostile contempt toward Plaintiff's race and national origin, the type of poisonous animus that links with discriminatory employment decisions.

Direct evidence of discrimination establishes "a specific link between the [alleged] discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the employer's decision." *Id*. at 933. In *Twymon*, the comments showed nearly the *opposite* of a link between animus and decision. They showed a misguided attempt to "preserve and promote" the plaintiff's career. *Id*. at 934. Unlike in *Twymon*, in Plaintiff's case the comments instead were made over a period of months, including *during* a termination attempt, and expressed vulgar hostility and contempt for Chinese people. They provide a basis to link animus and termination, where "stray remarks" would not.

Second, Plaintiff does not allege termination as the sole adverse employment action in which Defendant discriminated against him because of his race or national origin. *See* Doc. 175,

p. 6. In paragraph 15 of his Second Amended Complaint, quoted above, Plaintiff also alleged Shepherd's direct involvement in discrimination with respect to various terms, conditions and privileges of plaintiff's employment, including:

- Imposing a heavier teaching schedule, scheduling plaintiff's classes on days not previously agreed upon;

- Refusing to provide plaintiff with a teaching assistant(s);

- Omitting plaintiff from important email communications;

- Threatening plaintiff's employment;

- Withholding plaintiff's wages and compensation; and

- Promoting Caucasians over more qualified Chinese/Asian employees or applicants.

Second Amended Complaint. Doc. 42 at ¶ 15.

Defendant has not disputed that any of Shepherd's comments were related to a decisional process leading to any of these adverse employment actions. Even if the Court were to find Shepherd's comments admissible to show discriminatory animus in Plaintiff's termination, the comments would still be admissible to show Shepherd's discriminatory animus in taking, or taking part in, each of the above adverse employment actions against Plaintiff.

Third, Plaintiff's theory of this case includes that Shepherd was a driving force behind his termination. Shepherd's discriminatory animus was at the root of that final discriminatory action. Plaintiff intends to show that the series of discriminatory actions described in Paragraph 15 of the Second Amended Complaint culminated in his termination, and that the entire process was motivated by Shepherd's discriminatory animus, permitted or facilitated by the other administrators. Shepherd was not merely a decision maker but a prime mover.

6

Defendant also argues that because Plaintiff did not allege the specifics of the comments until his Opposition to Defendant's Motion for Summary Judgment, that this indicates a lack of Plaintiff's "reliability," and that evidence of the comments should therefore be excluded. Defendant offers no legal basis for this assertion, and fails to analyze it in terms of Rule 403. Judgments about Plaintiff's credibility should be considered by the jury, not in this Motion.

### c. The probative value of Shepherd's comments far outweighs any prejudicial effect

To justify exclusion under Rule 403, the prejudicial effect must "substantially outweigh" the probative value. Fed. R. Evid. 403. As explained in the context of distinguishing *Twymon*, Shepherd's comments directly demonstrate the discriminatory animus involved in the decision to take discriminatory adverse employment actions against Plaintiff, including termination. As such, they have great probative value.

Defendant's only real reason for asserting a lack of probative value is a return to the theory that these were stray remarks, which has already been rebutted above. As for a prejudicial effect, Defendant fears that a jury will be unable to separate fact from emotion because the comments "could be considered inappropriate and boorish." Doc. 175 at p. 13. This sounds like a description of a drawing-room faux pas, not something that could inflame a jury. Defendant falls far short of showing significant prejudicial effect, much less any effect that would "substantially outweigh" the probative value of the comments.

At the pretrial conference where Defendant's previous Motion *in Limine* was taken up, the Court stated it would rule on the admissibility of Shepherd's comments on a "case by case" basis during trial. Plaintiff believes this remains the wisest way to proceed.

### 2. Statements by individuals who worked in the COIB are admissions

As Defendant notes, the Court overruled Defendant's request to exclude the statements described in Section 2 of its Motion. In renewing its Motion as to these statements, Defendant again relies on its arguments that it was not a joint employer of any of the individuals who worked at the COIB, and that their statements are therefore not admissions of a party opponent. In its Order denying summary judgment to Defendant, the Court found that a reasonable jury could find based on Plaintiff's uncontroverted facts that Defendant was a joint employer of Plaintiff. Doc. 128 at p. 7. Defendant was a joint employer of the other employees of COIB as well. As a result, the statements by COIB employees named in Section 2 of Defendant's Motion were admissions of a party opponent and are not inadmissible hearsay. Plaintiff addresses this general issue in more detail separately in his Trial Brief and refers the Court to that analysis.

### 3. Evidence of instructors' absences not resulting in discipline

The scope of evidence Defendant asks the Court to exclude in this section of its Motion is not entirely clear. In the final paragraph of this request, Defendant refers only to "testimony from Plaintiff or anyone else speculating as to other individuals' alleged absences, the knowledge of their supervisors, and any subsequent discipline[.]" Doc. 175 at 17. To the extent that Defendant requests only to exclude speculative testimony, the request is comparatively uncontroversial, though an order to that effect would superfluously repeat already applicable evidentiary rules.

However, in that same paragraph, Defendant asks, based on that same premise about speculation, that "Plaintiff should be directed to refrain from referring either directly or indirectly to any alleged absences of other instructors at the COIB." *Id.* There is no necessary reason why *all* possible evidence of other instructors' absences must be speculative. To the extent that Defendant requests that all evidence of instructors' absences be excluded, even if not speculative, Defendant's arguments about speculation are not adequate support.

8

Earlier in the request, Defendant refers more specifically to Plaintiff's statements in his Statement of Additional Disputed and Undisputed Material Facts in his Response to Defendant's Motion for Summary Judgment, at Paragraphs 54 and 55, and an email from Coutts to Robinette, listed in Plaintiff's October 6, 2014 Exhibit List as P153. Doc. 175 at 15-16. Defendant argues that admission of "this evidence" would be inappropriate. Doc. 175 at 16.

Whatever the scope of the evidence Defendant seeks to exclude, the argument for its exclusion comes down to the argument that Plaintiff *cannot* offer sufficient evidence that similarly situated instructors at the COIB had repeated absences but were not disciplined.

Defendant states that Plaintiff "cannot meet [the] stringent requirements applicable to claims of alleged similarly-situated employees." Doc. 175 at 16-17. Defendant's extreme skepticism is unwarranted (and speculative in its own right).

Defendant has listed Dean Dong and Dean Coutts in its Exhibit List, indicating that it will call Dong and may call Coutts. Doc. 181. Both Plaintiff and Defendant have listed Stephen Robinette as a witness. *Id.;* Doc. 180. Plaintiff believes that one or more of these witnesses are competent to testify to the facts necessary to establish that:

- Other instructors at COIB had repeated absences;

- Defendant knew of absences of other instructors at COIB;

- Defendant did not terminate or take other adverse employment actions against those instructors; and

- Those instructors were similarly situated to Plaintiff.

In arguing that any instructors to which Plaintiff would point as comparators were not similarly situated to Plaintiff, Defendant cites *Bone v. G4S Youth Servs., LLC*, stating that the

"test for determining whether employees are similarly situated is a rigorous one."[1] Doc. 175 at 16. Defendant claims that Plaintiff "cannot" show that the instructors who also missed classes "dealt with the same supervisor, [were] subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Id.* (quoting *Bone*).

The "similarly situated co-worker inquiry is a search for a substantially similar employee, not for a clone." *Chaney v. Plainfield Healthcare Ctr.*, 612 F.3d 908, 916 (7th Cir. 2010). In order to rely on comparator evidence such as Ridout offers, he must prove only that the other employees were "similarly situated in all relevant respects." *Lynn v. Deaconess Med. Ctr.-W. Campus*, 160 F.3d 484, 487 (8th Cir. 1998) (quoting *Harvey v. Anheuser-Busch, Inc.*, 38 F.3d 968, 972 (8th Cir. 1994)). To demonstrate that they are "similarly situated," he "need only establish that he or she was treated differently than other employees whose violations were of comparable seriousness." Id. at 488 (quotation omitted, emphasis added). In Lynn we explicitly rejected the notion that comparator analysis requires that the compared employees engaged in "the exact same offense." Id. We observed that demanding that the compared employees have engaged in precisely identical conduct would make an employee's conduct which was more serious than that of the plaintiff irrelevant to the analysis. Id. "Common sense as well as our case law dictates that we reject such an approach." Id.

Defendant admits that "All faculty in the Associate of Arts program and staff at the COIB report to the dean and associate dean of the COIB." Doc. 65, Defendant's Suggestions in Support of Motion for Summary Judgment, Statement of Undisputed Material Facts at ¶ 22. Defendant further admits that "All faculty in the Associate of Arts program at the COIB who are not Chinese citizens enter into written employment agreements with LNU as "foreign experts" under

---

[1] 686 F.3d 948, 956 (8th Cir. 2012).

Chinese law," that Plaintiff's contracts with the COIB were a "standardized form of 'foreign expert' contract created by the Chinese government with regard to hiring persons to work in China" and was entered into on the COIB side by Dean Dong. *Id.* at ¶s 20, 35 and 37-44. These admissions support the probability that Plaintiff will be able to elicit testimony from Dong, Coutts or Robinette establishing that other instructors, all also "foreign experts" and instructors reporting to the Deans and Associate Deans, including Dong and Coutts, were similarly situated to Plaintiff in all relevant respects. They also support the probability that one or more of Dong, Coutts or Robinette will have knowledge of whether any of those similarly situated instructors, who, again, report to the Deans and Associate Deans, missed classes. Finally, it is probable that all three of these witnesses, as well as others on the witness lists who were at the COIB at relevant times, will have knowledge of whether any other instructors were terminated, and possibly of other disciplinary actions.

To the extent that Defendant argues that any of the instructors were not Defendant's employee, Plaintiff again refers the Court to Plaintiff's Trial Brief for analysis of the joint employment issue.

It is far from established that Plaintiff "cannot" make the necessary showing that other similarly situated employees of COIB were treated differently in that they had absences from class yet were not disciplined for them. To prohibit Plaintiff from presenting any such evidence with an order *in limine* would be premature and inappropriate, and unfairly prejudicial to Plaintiff's ability to show that he was subjected to disparate treatment by Defendant based on his race or national origin. Defendant's request for an order *in limine* in this section should be denied.

**4.    Evidence of other Chinese instructors' pay**

Defendant seeks to exclude all evidence of the pay received by other Chinese instructors at the COIB. Defendant argues that this evidence is not relevant to Plaintiff's claims because Plaintiff "is not even claiming that he was paid unequally or that he was discriminated against with regard to his wages." Doc. 175 at 19. Earlier in its Motion, however, Defendant acknowledges, quoting Plaintiff that Plaintiff alleged in his Response to Defendant's Motion for Summary Judgment, that the COIB had a "well-known discriminatory policy of paying native Chinese instructors inequitably." *Id.* Evidence of the wage disparity is not intended to show directly that Plaintiff was discriminated against in his pay. Rather, it is relevant in that it goes to show that all of the adverse employment actions Plaintiff alleges were discriminatory.

If Plaintiff can show that the COIB had systematically paid native Chinese instructors less than their non-Chinese counterparts, this supports the inference that the lower pay was due to systemic discrimination based on race or national origin. Showing that systemic discrimination at the COIB supports the interpretation of other adverse employment actions as based in discrimination. If the COIB discriminated systemically against Chinese instructors on a condition of employment as fundamental as pay level, this makes it much more likely that they discriminated in other, less obvious, ways against Chinese instructors. Since Plaintiff is a member of that group he alleges was subjected to systemic discrimination, the evidence is relevant to each of his theories of discrimination under his Count I. Defendant's request should be denied and Plaintiff should be permitted to offer evidence of the COIB's systemic discrimination in pay against Chinese instructors.

### 5. Evidence of other alleged misconduct by Dan Shepherd

In this request, Defendant seems only to request that Plaintiff not be allowed to testify regarding his allegations that Dan Shepherd engaged in misconduct in his performance as an

instructor at COIB and as an administrator, where that misconduct is not related to adverse employment actions taken against Plaintiff. Defendant argues that such evidence is irrelevant to Plaintiff's claims. However, buried within this request is an attempt to exclude clearly relevant evidence of Shepherd's discriminatory animus.

Defendant groups together all types of alleged misconduct by Shepherd to request a blanket prohibition, listing several types of alleged misconduct. Some of these may appear irrelevant to Plaintiff's claims. However, stuck between commas in the middle of the list, then smuggled into a footnote in a bland summary, is a reference to the confrontation between Shepherd and Charlie Kong, in which Shepherd allegedly yelled at Kong that he "wouldn't take shit from a Chinese fucker." Doc. 103 at ¶ 46; *See* Doc. 175 at 20 (footnote 4) (citing Paragraph 46 of Plaintiff's Statement of Disputed and Undisputed Material Facts and inserting the summary, "Plaintiff also describes a confrontation that allegedly occurred with Charlie Kong, another instructor at the COIB"). This was also when Shepherd allegedly "got into Plaintiff's face" and said "if [he] could, [he] would kill [Kong]. If the Chinese law allowed it, [he] would kill him." Doc. 103 at ¶ 46.

Shepherd's alleged statement that he "wouldn't take shit from a Chinese fucker" is clearly relevant to show his discriminatory animus against Chinese people and, hence, against Plaintiff. This evidence shows that not only was Shepherd prejudiced against Chinese people, he was so contemptuous that he felt free to shout such an explicit expression of his prejudice to a Chinese employee. This evidence should not be excluded. Defendant's request should be denied.

**10. Evidence of Plaintiff's performance as an instructor is admissible to show pretext**

In this Section of its Motion, Defendant again argues that statements by individuals who worked for COIB are inadmissible hearsay. Again, Plaintiff addresses this argument in greater detail in his Trial Brief. The statements are admissible party admissions because Defendant was the individuals' joint employer.

Defendant also denies the probative value of Plaintiff's evidence of his strong teaching performance, including: the note of appreciation from Whittkorn, student evaluations affirming Plaintiff's commitment and diligence as well as effectiveness, the petition signed by Plaintiff's former students, and emails of support from students. *See* Doc. 175 at p. 24. This evidence goes to show that Defendant's proffered reason for termination was pretextual, and that the decision to terminate Plaintiff was motivated by discriminatory animus.

Defendant's proffered reason for terminating Plaintiff was that Plaintiff allegedly missed two classes. Defendant has never been able to substantiate that Plaintiff actually missed any classes, except in the sense that Plaintiff was unable to teach classes at the start of the Fall 2009 semester because Shepherd failed to provide Plaintiff with an accurate class schedule. The evidence Defendant seeks to exclude under this Section of its Motion is relevant to show: 1) that Plaintiff is unlikely to have culpably missed the classes, since he had not done so in previous semesters, and 2) that Defendant's proffered reason for termination was a pretext, since Plaintiff's sudden termination cannot be explained in the context of any other problems with his performance.

In particular, the student evaluations from prior semesters is relevant to show that Defendant's proffered reason for termination was a pretext. The prior student evaluations show not only that Plaintiff was an effective instructor, but that he was committed and diligent as well, tending to show that it was unlikely that he would suddenly skip the first classes of a semester.

As Plaintiff showed in his Opposition to Defendants Motion for Summary Judgment, in all the evaluations from Plaintiff's three years as an instructor at COIB, there were no complaints about him missing classes. One evaluation specifically praised Plaintiff for holding class even though he was seriously ill. Plaintiff's Statement of Additional Disputed or Undisputed Material Facts, ¶ 22, Doc. 103.

Since Defendant will not be able to show that its proffered reason for termination is legitimate, this leaves the question of Defendant's actual motivation for terminating Plaintiff. In considering this question, a jury may naturally look to Plaintiff's record of performance as an instructor for the COIB. If Plaintiff had a poor performance record, with significant complaints from students or other failures to fulfill his obligations as an instructor or employee, that would tend to explain why Defendant was ready to terminate him while citing two alleged absences that it was unable to substantiate. Instead, the note from Whittkorn, the student evaluations, and the show of support from students in the petition and emails, go to show that there is no such explanation to be found. It helps answer a natural and legitimate question in the minds of the jury members. It shows that Plaintiff was not someone who needed to go for the good of the school, with the absences serving as a simpler, more easily defended proxy for an overall failure to perform. It shows that Plaintiff's termination was a bolt out of the blue, calling for another explanation in order to understand it.

Further, Defendant will likely offer evidence of student evaluations from the Fall 2009 semester when it alleges Plaintiff missed classes, in which students state that Plaintiff was absent from class. If these are allowed into evidence in an attempt to show that Plaintiff was absent from classes, stripped of the context of students' overall evaluation of Plaintiff, this would be fundamentally unfair to Plaintiff.

**13.    The Court should rule individually at trial on admissibility of the audio recordings**

Defendant argues that seven audio recordings identified by Plaintiff as proposed exhibits should be excluded, chiefly under three theories: that statements of COIB personnel on the recordings are hearsay, that Plaintiff will not be able to lay a foundation for the recordings, and that they would be prejudicial due to recording quality and use of a foreign language.

As to Defendant's hearsay argument, Plaintiff again refers the Court to his more detailed treatment of this issue in his Trial Brief. Again, Defendant was a joint employer of the individuals making the statements, and the statements are admissible as Defendant's admissions.

It would be premature to determine that Plaintiff will not be able to lay a foundation for this evidence at this point. Plaintiff will offer testimony at trial to lay the necessary foundation. Defendant has no legitimate basis to declare in advance that Plaintiff will not be able to do so. The only reason Defendant gives for that contention is that Plaintiff is not a participant in two of the seven recordings, and the individuals whose conversation is recording in those recordings are not listed as witnesses. *See* Doc. 175 at p. 29. Defendant says nothing further to eliminate the possibility that Plaintiff can establish a foundation without the participants as witnesses, and no clear reason at all why Plaintiff would not be able to lay the foundation for the other five. *See id.*

Defendant argues that "[t]he recordings are incredibly prejudicial to the extent that the full conversation cannot be heard or understood." Doc. 175 at p. 29. This is not an instance where Plaintiff is asking that certain portions of available evidence be admitted while context for that evidence be excluded. Plaintiff is not attempting to curate which portions of the audio will be considered. Defendant does not identify what portions of the recordings require missing context, which renders its argument abstract. To address the admissibility of the recordings

16

concretely, the Court should rule on their admissibility at trial, when the Court has the opportunity to consider each recording concretely as an individual item of evidence.

Defendant also contends that three recordings "contain[] negotiations and settlement discussions regarding Plaintiff's claims against LNU and the COIB," but does not explain the basis for this contention. As a result, this contention cannot be evaluated and should not be considered in ruling on this Motion. In addition, Defendant's own arguments on joint employment imply that Defendant had no involvement in any purported settlement discussions in the recordings. Although Plaintiff disagrees on the joint employer issue, Defendant should not be allowed to have it both ways.

**B.     Matters related to Plaintiff's damages**

**1.     Admissibility of evidence of Plaintiff's damages for back pay should be decided at trial**

Defendant argues that Plaintiff's entire claim for back pay and housing allowances should be excluded under Fed. R. Civ. P. 37(c)(1) because Plaintiff allegedly "failed to provide a method or formula for how he came to these amounts and to make available documents on which these amounts were based, as required by Rule 26(a)(1)(A)(iii)." Doc. 175 at p. 31. Defendant cites *TCF Inventory Fin. Inc. v. Northshore Outdoor, Inc.*,[2] for the proposition that "other courts have held in similar circumstances that exclusion of such evidence is appropriate." *Id*.

*TCF* actually demonstrates that the remedy Defendant seeks is inappropriately extreme. In *TCF*, the defendant, counterclaiming, alleged four categories of damages that the plaintiff attempted to exclude under Rule 37(c)(1): lost profits, lost bonuses, lost business opportunities, and lost customer orders. *TCF* at 2-5, 12. Of those, the court excluded only evidence of lost

_____

[2] 2012 U.S. Dist. LEXIS 91997 (N.D. Ohio July 3, 2012).

profits based on a failure to disclose a computation. *Id.* at 10-14. Lost profits evidence was excluded because Defendant completely failed to offer any dollar amounts on lost profits, much less precise calculations or supporting documentation. *Id.* at 11-12. In interrogatory responses and the depositions of its principals, defendants "could not articulate even an estimate of the store's average or typical profit[.]" *Id.* at *7.

However, defendant's principals testified in depositions that they would have received a bonus of $20,000 to $25,000, and that they had reached a verbal agreement with a buyer to purchase their business for $100,000. *Id.* at 12-13. The court found that this testimony was sufficient to notify the plaintiff of defendant's computations of damages in those categories. *Id.* (As to lost customer orders, the defendant provided documentation of exactly which customer orders were lost, and in what amounts, so computation of those damages was not so disputed. *See id.* at 13-14.)

Defendant admits in its Motion that Plaintiff disclosed in an interrogatory response that he was seeking back pay through December 31, 2011. Doc. 175 at 31 (footnote 8). Regardless of whether Defendant admits that it was Plaintiff's employer, due to its role in the COIB it had access to information about how much Plaintiff had been paid as an instructor. Informed of the time span over which Plaintiff sought back pay, Defendant had sufficient information to understand how much Plaintiff would have been paid over that time. Whether the precisely appropriate exchange rate was used, or whether the rate should be multiplied over 12 months per year or 9 ½, are issues still to be resolved, but Plaintiff sufficiently informed Defendant of what amount he would be seeking in back pay.

In addition, at the time Plaintiff submitted his supplemental disclosure, Plaintiff was acting *pro se*. As Plaintiff noted in his response to Defendant's first Motion *in Limine*, before his

attorney withdrew, the attorney had not notified Plaintiff of an issue with computations of back pay. Doc. 155 at p. 22. To whatever extent the Court may find that a client with adequate representation could have provided more detail in the computation, the Court should take into account that Plaintiff was doing his best to comply with the Federal Rules without legal representation.

### 6. Evidence of Plaintiff's financial condition

Defendant's Motion asks the Court to exclude "evidence of Plaintiff's current financial condition." Doc. 175 at 39. However, Defendant also argues elsewhere in its Motion that Plaintiff should be prohibited from offering evidence of back pay damages in part because Defendant claims Plaintiff failed to adequately mitigate his damages since his termination. Although Plaintiff has no plans to attempt to introduce evidence of his "current financial condition" for the purpose of creating sympathy, Plaintiff does intend to offer evidence of damages for back pay and other losses. Simply by its nature, and though entirely appropriate to the purpose of showing damages, this evidence may incidentally imply that Plaintiff was in poor financial condition after his termination, and possibly afterward.

Defendant also argues elsewhere that because Plaintiff attended and graduated an MBA program since the time of the events at issue in this suit, Plaintiff should not be allowed to offer evidence of back pay damages during that period or since, in part on the theory that Plaintiff was "idle by choice" during the period. Doc. 175 at 33. Defendant should not be permitted to argue that Plaintiff placed himself in a poorer than necessary financial condition, and yet forbid Plaintiff to address the issue of his financial condition in response. Nor should Defendant be permitted to imply, through evidence that Plaintiff has obtained an MBA, that Plaintiff is in good

financial condition due to his advanced business degree, if Plaintiff will not be permitted to rebut that implication.

For those reasons, even though Plaintiff has no intention of offering evidence of his "current financial condition" for the purpose of eliciting sympathy, Plaintiff asks that the Court deny Defendant's blanket request to exclude all evidence relating to his financial condition.

### 7. Evidence regarding the University's insurance coverage

As Defendant notes in this request, at the October 10, 2014 pretrial conference where this same issue was taken up, the Court responded by directing Plaintiff to approach the bench before presenting any evidence or asking any questions about Defendant's insurance coverage. At the time, Plaintiff was acting *pro se*. Plaintiff will be represented by counsel at trial, who is aware of the rules of evidence concerning evidence of insurance coverage. An order excluding such evidence would be a superfluous repetition of already applicable rules of evidence. In any event, Plaintiff does not anticipate offering such evidence.

### C. Miscellaneous

### 1. Exhibits in Plaintiff's October 6, 2014 Exhibit List

Defendant's Motion requests that the Court exclude the exhibits set out in Plaintiff's October 6, 2014 Exhibit List. See Doc. 148. Defendant's Motion on this point is moot, as Plaintiff has offered a new Exhibit List. See Doc. 179. To the extent that any of Defendant's arguments in this section of his Motion may apply to the new Exhibit List, Plaintiff reserves the right to address them at the October 11 pretrial conference and at trial.

### 2. Witnesses other than those named in the Court's November 5, 2014 Order or identified in Plaintiff's April 1, 2015 email to Defendant's counsel

Defendant's Motion requests an order excluding testimony from any current or former employee of Defendant other than those "approved in the Court's November 5, 2014 Order and/or identified in Plaintiff's April 1, 2015 email" to Defendant's counsel. Plaintiff of course intends to abide by all orders issued by the Court. Consistent with that, Plaintiff reserves the right to request changes to the Court's interlocutory evidentiary rulings, including any order limiting the witnesses that Plaintiff may call.

### 3. Statements about intent or state of mind of others

Defendant asks the Court to inform Plaintiff "that his testimony and the testimony of his witnesses may not include any … conclusory statements or speculation as to the intent of others." Doc. 175 at p. 42. Plaintiff has no objection to any appropriate instruction from the Court on existing rules of evidence on speculative testimony by Plaintiff, or on eliciting inadmissible testimony from witnesses. Plaintiff objects to the extent that Defendant seeks to hold Plaintiff responsible for other witness's testimony, which he cannot control. Further, to the extent Plaintiff's request is for an order *in limine*, such an order would be superfluous, in that it would simply reiterate a rule of evidence that already applies. An order to that effect also would be premature. The better course would be the one the Court already took at the October 2014 pretrial conference, when the court withheld ruling.

### 4. References to Defendant's non-production of documents for which Defendant asserted attorney-client privilege

Defendant requests an order *in limine* "directing Plaintiff that he may not imply, through questioning or argument, that [Defendant] improperly withheld any documents or information pursuant to the attorney-client privilege." Doc. 175 at 43. Although Plaintiff has no plans to present evidence of Defendant's non-production of the documents described in this section, this

request should be denied. The order requested would expose Plaintiff to the peril of contempt without clear notice of what actions are forbidden, resulting in unfair prejudice to his legitimate presentation of his case.

Implications are subjective and open to interpretation. Plaintiff cannot tell in advance what "questioning or argument" may, under subjective interpretation, "imply" that Defendant improperly withheld the documents. If Plaintiff is subjected to so vague a standard, it will unfairly hamper his questioning and argument, potentially causing him to avoid legitimate questions and arguments solely to give a wide berth to potential contempt.

Plaintiff therefore asks the court to deny Defendant's request.

### 5. Evidence of settlement discussions

As Defendant notes in this request, at the October 10, 2014 pretrial conference where this same issue was taken up, the Court responded by directing Plaintiff to approach the bench before presenting any evidence or asking any questions about settlement offers or discussions related to this case or the previous litigation in China. At the time, Plaintiff was acting *pro se*. Plaintiff will be represented by counsel at trial, who is aware of the rules of evidence concerning settlement discussions. An order excluding such evidence would be a superfluous repetition of already applicable rules of evidence. In any event, Plaintiff does not anticipate offering such evidence.

### 6. Inquiry or comment about the testimony of other witnesses

Defendant asks that the Court preclude Plaintiff "from commenting on or inquiring with one witness about the testimony of another witness." An order to this effect would exceed the appropriate restrictions of the relevant law, and Defendant's request should be denied.

Defendant cites *Nichols v. American Nat'l Ins. Co.* for the proposition that "[i]t is improper for one witness to comment on the testimony of another witness."[3] However, as Defendant notes in its parenthetical to that citation, the case actually forbids testimony regarding credibility or truthfulness of other witnesses. Doc. 175 at 44. In *Nichols*, the court found that it was improper under Rule 702 and *Daubert* for an expert to testify about the psychological fitness of another witness as it related to that witness's credibility, because such determinations of reliability are the province of the jury. *See Nichols* at 883. This is not a holding that it is "improper for one witness to comment on the testimony of another witness" in all respects.

Defendant also cites a state court case, *Stone v. City of Columbia*, for the same proposition, qualified by a similar parenthetical.[4] *Stone* involved the admissibility of an expert opinion on the reliability of another expert's opinion. *See id.* The court found no error in allowing any of the questions or testimony at issue, and noted that:

> [A]lthough "it would obviously be improper to place [a] witness on the stand to testify that in his opinion [another witness] was not telling the truth[,] . . . this is far different from permitting testimony with reference to facts which if believed by the jury would have the effect of discrediting the witness before the jury."

*Id.* at 747 (quoting *Fries v. Berberich*, 177 S.W.2d 640, 643 (Mo. App. 1944)).

Plaintiff does not intend to elicit improper testimony by any witness on the credibility of any other witness. However, Defendant's request for this order *in limine* goes well beyond precluding such impermissible testimony, to precluding *any* inquiry about the testimony of other witnesses. This would threaten contempt for entirely proper questions about whether or not a witness agrees with the facts to which other witnesses testified. Such questions are not forbidden by the law Defendant cites, as the *Stone* court noted. Defendant's request should be denied.

---

[3] 154 F.3d 875, 883-884 (8th Cir. 1998).
[4] 885 S.W.2d 744, 746 (Mo. App. 1994).

WHEREFORE, Plaintiff prays the Court deny Defendant's motion in limine and for such other orders as are just in the premises.

Respectfully submitted,
JOHNSTON & SMITH, LLC

/s/    George S. Smith
George S. Smith, Mo. Bar #53019
Randall B. Johnston, Mo. Bar #35936
2800 Forum Blvd., Suite 3
Columbia, MO 65203
(573) 499-1616
(573) 449-3004 (Fax)

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of August, 2015, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system, which sent notification of such filing to:

Ryan Todd DeBoef                          Ian Cooper
Missouri State University                 Tueth, Keeney, Cooper, Mohan & Jackstadt, P.C.
901 St. Louis St.                         34 Meremac Ave.
Suite 1800                                Suite 600
Springfield, MO 65806                     St. Louis, MO 63105

/s/    George S. Smith